**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Reginald COLEMAN, Defendant–
Appellant.**

**No. 96–1823.**

United States Court of Appeals,
Sixth Circuit.

Argued: Sept. 23, 1998

Decided and Filed: July 28, 1999

Jonathan M. Epstein (argued and briefed), Federal Public Defenders Office, Detroit, Michigan, for Defendant–Appellant.

Krishna S. Dighe, Office of the U.S. Attorney, Detroit, Michigan, David J. Debold, Assistant U.S. Attorney (argued and briefed), Detroit, Michigan, for Plaintiff–Appellee.

Before: MARTIN, Chief Judge; MERRITT, KENNEDY, JONES, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, BATCHELDER, DAUGHTREY, MOORE, COLE, CLAY, and GILMAN, Circuit Judges.

NATHANIEL R. JONES, J., delivered the opinion of the court, in which BOYCE F. MARTIN, Jr., C.J., MERRITT, DAVID A. NELSON, DAUGHTREY, MOORE, COLE, CLAY, and GILMAN, JJ., joined. KENNEDY, J. (pp. 362–363), delivered a separate dissenting opinion, in which RYAN, ALAN E. NORRIS,

SUHRHEINRICH, SILER, and BATCHELDER, JJ., joined, with ALAN E. NORRIS, J. (pp. 363–364), also delivering a separate dissenting opinion, in which KENNEDY, RYAN, BOGGS, SUHRHEINRICH, SILER, and BATCHELDER, JJ., joined.

## OPINION

NATHANIEL R. JONES, Circuit Judge.

Defendant Reginald Coleman appeals the sentence imposed following his plea of guilty to distribution of a controlled substance (crack cocaine) in violation of 21 U.S.C. § 841(a)(1). Coleman contends that the district court erred in concluding that it lacked the legal authority to depart downward based on the government's allegedly improper investigatory techniques. We granted *en banc* review primarily to address the applicability of *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) to the facts of this case. We now hold that *Koon*, a decision of which the district court did not have the benefit at the time of sentencing, makes clear that a trial judge cannot categorically exclude any non-prohibited factors from consideration for a downward departure. We therefore reverse and remand.

## I. Facts

In December of 1994, Coleman was approached by an undercover agent for the Bureau of Alcohol Tobacco and Firearms ("ATF"). The agent, Special Agent Joseph Secrete, was conducting an investigation in which he posed as a successful businessman and approached ex-felons as they were lawfully reporting to their parole office. According to the government, Secrete would receive a tip that certain individuals who were on parole for state convictions, and who also listed inaccurate addresses, may be engaging in criminal activity. Secrete would then obtain a photograph of the individual and the location where the individual reported to a parole officer. After identifying the individual, Secrete would approach him as he was leaving his parole office. According to Coleman, Secrete would subsequently give targeted parolees a business card, which identified Secrete as the owner of the fictitious "Atlantic Tours & Financing," and befriend the parolees by offering them rides, trips, jobs, and other business opportunities. Secrete would then offer to deal in illegal narcotics or firearms. Apparently, all of the suspects targeted for investigation were African–American.[1] Secrete approached Coleman, and on five separate occasions, Coleman delivered cocaine base to him. On each occasion, Secrete would give Coleman cash to purchase drugs. Coleman would then take the money, drive out of Secrete's sight, and return with crack cocaine. Secrete would thereafter pay Coleman $50.00 for his services.

On September 7, 1995, Coleman was indicted on five counts of distribution of a controlled substance under 21 U.S.C. § 841(a)(1). Pursuant to a Rule 11 plea agreement, Coleman pleaded guilty to two counts; the other counts were dismissed. On May 21, 1996, after his conviction, Coleman filed a motion for a downward departure, arguing that his offenses were committed due to the improper investigative techniques of the ATF. Coleman alleged that the ATF operation impermissibly targeted and induced parolees to commit crimes, and specifically targeted only African–Americans. Coleman asserted that these factors removed the case from the "heartland" of drug offenses. The district court found that Coleman's argument was not a sentencing issue, but rather a selective prosecution issue, and thus, an improper legal basis for a downward departure. Consequently, the district court sentenced Coleman to a term of 100 months of imprisonment, four years of supervised re-

---

1. According to the government, there were several motions by different defendants attacking this investigative technique. In addi-
tion, the technique prompted the Federal Defender's Office to conduct a survey of all such cases in the Eastern District of Michigan.

lease and a mandatory special assessment of $100.00. Coleman thereafter appealed. A divided panel of this court reversed and remanded, holding that in light of *Koon*, a trial judge cannot categorically exclude any non-prohibited factors from consideration for a downward departure. *See United States v. Coleman*, 138 F.3d 616 (6th Cir.), *vacated*, 146 F.3d 1051 (6th Cir.1998). We granted rehearing *en banc* and also vacated the sentence and remand.

## II.  Discussion

■ Generally, a court's failure to exercise its discretion and grant a downward departure is not reviewable. *See, e.g., United States v. Landers*, 39 F.3d 643, 649 (6th Cir.1994). An appellate court may only review a denial of a motion for a downward departure if the district court judge "incorrectly believed that [s]he lacked any authority to consider defendant's mitigating circumstances as well as the discretion to deviate from the guidelines." *Id.* (citation omitted). Here, the district court believed that it lacked the authority and discretion to depart downward. The district court repeatedly stated that it believed Coleman's motion was a selective prosecution issue, rather than an issue to be determined in a motion for a downward departure.[2] The district court further concluded that because Coleman was complaining only about investigatory techniques, it did not "see a legal basis for using [investigatory techniques] as a downward departure here." J.A. at 120. Significantly, the district court noted that even if there was hard evidence of improper investigatory techniques, it still would not be an "issue" which would entitle the defendant to a downward departure. Thus, it is clear that the district court was far more concerned with the procedural posture of the claim than with whether

there was sufficient evidence to support a downward departure. Viewing the district court's statements in their entirety, it is apparent that the district court believed that Coleman's downward departure arguments could not be brought at sentencing, and that it did not have the authority or discretion to seriously consider defendant's claims of improper investigatory techniques at that time. Accordingly, we may review the district court's decision.

### A.  Standard of Review

■ We review a district court's belief that it lacked the authority for a downward departure under the Sentencing Guidelines under an abuse of discretion standard. *Koon*, 518 U.S. at 99–100, 116 S.Ct. 2035. Thus, we note that although a determination of the permissible factors a court may consider in departing downward under any circumstances is a question of law, and we are not required to defer on that point, the abuse of discretion standard includes review to determine whether a court was guided by an erroneous legal conclusion. *Id.* A district court by definition abuses its discretion when it makes an error of law. *Id.* at 100, 116 S.Ct. 2035.

### B.  Investigative Techniques

During the sentencing hearing and on appeal, the government argued that the district court lacked the authority to consider a downward departure, asserting that even if Coleman had in fact established a case of selective prosecution, there was no basis for a downward departure and the government was "unaware of any legal authority ... to depart below the applicable sentencing guideline range because of the method of investigation." Gov't Br. at 13. Moreover, the government alleged that courts have repeatedly refused to allow downward departures

2. For example, the district judge stated, "the problem I have with the motion ... is that it's really not a sentencing issue [], it's not a downward departure issue. If anything, it belongs in a motion to dismiss the indictment or something along those lines." J.A. at 119. Later she reiterated, "again you're really complaining about investigatory techniques and, again, that kind of goes to the selective enforcement issue." J.A at 120.

based on governmental misconduct. The government, however, misunderstands the import of *Koon*.[3]

■ A downward departure is permitted when there is a mitigating factor that has not been adequately considered in formulating the Sentencing Guidelines. 18 U.S.C. § 3553(b); *see also* 1998 U.S.S.G. § 5K2.0. Because the Commission "did not adequately take into account cases that are, for one reason or another 'unusual,'" such factors will normally not be considered in the typical "heartland" of cases embodying the conduct that each Guideline describes. *Koon*, 518 U.S. at 93, 116 S.Ct. 2035 (quoting 1995 U.S.S.G. ch. 1, pt. A, intro. comment. 4(b)). A court may grant a downward departure, then, if circumstances exist which take the case out of the typical "heartland" of cases embodied by the Guideline. *Id.* at 93–94, 116 S.Ct. 2035. The Supreme Court, adopting a test proposed by the First Circuit, stated that a court considering a departure should inquire:

1) What features of this case, potentially, take it outside the Guidelines' "heartland" and make of it a special, or unusual, case? 2) Has the Commission forbidden departures based on those features? 3) If not, has the Commission encouraged departures based on those features? 4) If not, has the Commission discouraged departures based on those features?

*Id.* at 95, 116 S.Ct. 2035 (citation omitted). "If a factor is unmentioned in the Guidelines, the court *must*, after considering the 'structure and theory of both relevant individual guidelines and the Guidelines taken as a whole,' decide whether it is sufficient to take the case out of the Guideline's heartland." *Id.* at 96, 116 S.Ct. 2035 (citation omitted)(emphasis added).

■ There are a potentially infinite number of factors which may warrant a departure. *Koon* makes clear that a court may not categorically exclude the consideration of any one factor, and that to do so would be a transgression of the policymaking authority vested in the Commission. *Id.* at 106–07, 116 S.Ct. 2035. A court is strictly limited to determining merely "whether the Commission has proscribed ... consideration of the factor," and if not, "the sentencing court must determine whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." *Id.* at 109, 116 S.Ct. 2035; *accord United States v. Mendoza*, 121 F.3d 510, 513 (9th Cir.1997); *United States v. Core*, 125 F.3d 74, 76–77 (2d Cir.1997 ) ("[T]he Guidelines themselves make clear that a court should consider in every case, not only in rare circumstances, whether a departure is appropriate" and "absent express prohibition, a sentencing court is 'free to consider in an unusual case whether or not the factors that make it unusual ... are present in sufficient kind or degree to warrant a departure'") (citations omitted), *cert. denied sub nom. Reyes v. United States*, —— U.S. ——, 118 S.Ct. 735, 139 L.Ed.2d 672 (1998); *United States v. Brock*, 108 F.3d 31, 34 (4th Cir.1997)

---

**3.** The government also overstates its position. Even before *Koon*, courts had, in some instances, granted downward departures based in part on improper actions of the government. For example, courts have utilized downward departures in cases where the government has induced a defendant to commit a crime, but the defense of entrapment is not warranted. *See, e.g., United States v. McClelland*, 72 F.3d 717, 724–25 (9th Cir.1995); *United States v. Wise*, 976 F.2d 393 (8th Cir. 1992). These courts applied U.S.S.G. § 5K2.12 as a basis for their decision. That section, entitled "Coercion and Duress," con-

sidered the fact that a defendant may have committed an offense because of "serious coercion, blackmail or duress, under circumstances not amounting to a complete defense," an encouraged factor in downward departure determinations. *See* 1997 U.S.S.G. § 5K2.12. In addition, courts have granted motions to depart downward in cases of "sentencing entrapment" where the government has specifically induced defendants to commit more serious crimes in order to enhance their punishment. *See, e.g., United States v. Barth*, 990 F.2d 422, 424 (8th Cir.1993).

("[T]he unmistakable teaching of *Koon* is that only those factors on which the Commission has forbidden reliance ... never may provide an appropriate basis for departure. All others potentially may provide a basis for departure under appropriate circumstances.") (citations omitted); *United States v. Sherpa*, 97 F.3d 1239, 1244 (9th Cir.1996). The only factors which are so precluded from consideration are race, sex, national origin, creed, religion, and socio-economic status, U.S.S.G. § 5H1.10; lack of guidance as a youth, U.S.S.G. § 5H1.12; drug or alcohol dependency, U.S.S.G. § 5H1.4; and economic hardship, U.S.S.G. § 5K2.12. All other factors which a defendant posits as evidence that a downward departure may be warranted must be considered by the district court utilizing the analysis described above and making a "refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing." *Koon*, 518 U.S. at 98, 116 S.Ct. 2035. To do otherwise would directly contravene the express holding of *Koon* and "would run afoul of one of the important concerns articulated [by that decision]." *United States v. Olbres*, 99 F.3d 28, 34 (1st Cir. 1996). Thus, we reiterate that there are an unquantifiable number of potential departure factors, including heretofore unknown factors that have not been previously considered by a court. Simply because a court has not directly ruled on the factor at issue does not excuse the district court from considering the factor as a potential basis for a downward departure.

Additionally, to the extent that any of our prior cases have indicated that such factors as improper investigative techniques may *never* warrant consideration for a downward departure, we follow our sister circuits in finding that *Koon* overrules all such determinations. *See, e.g., Brock*, 108 F.3d at 35 (finding that the Fourth Circuit's prior holding, that post-offense rehabilitation can never form a proper basis for departure, is effectively overruled by *Koon*); *Sherpa*, 97 F.3d at 1244 (finding that the Ninth Circuit's prior holding, that a sentencing judge may not reconsider facts that have been necessarily rejected by the jury's guilty verdict, is overruled by *Koon*).

▪ Improper investigative techniques, used as a basis for departing downward, are not factors considered by the Guidelines.[4] Thus, the district court was required to examine the structure and theory of the relevant Guidelines, and the Guidelines as a whole, to determine whether the grounds proffered by Coleman made the case sufficiently atypical to remove it from the "heartland." Erroneously believing that it did not have the authority to consider a downward departure, the district court discounted Coleman's request for such a departure, and thus abused its discretion.

▪ The government also argues that in making the determination that a downward departure is warranted, one or more of the statutory sentencing goals (deterrence, incapacitation, retribution and correction) must be implicated. We reject such a narrow application of the downward departure mechanism. The government completely misreads the Seventh Circuit case on which it relies for such a proposition. In *United States v. Pullen*, 89 F.3d 368 (7th Cir.1996), *cert. denied*, 519 U.S. 1066, 117 S.Ct. 706, 136 L.Ed.2d 627 (1997), the court noted that it had previously assumed that a departure from the Guidelines range must be consistent with the statutory sentencing goals of deterrence, incapacitation, retribution and correction. *Id.* at 370. The court went on to note, however, that "[t]he Supreme Court has since rejected this limitation on sen-

---

4. We note that, obviously, this differs from the prohibited factor of race, which can never serve as a basis for a downward departure. Coleman's actual race is irrelevant; it is only the government's allegedly improper targeting and inducement of Coleman which is at issue.

tencing discretion." *Id.* Thus, the court merely determined that those goals were reasons in favor of departure, but by no means determinative. *Id.* We make no finding with respect to whether such goals do in fact give additional reasons in favor of departure, but merely note that the Sentencing Guidelines mention "nothing about requiring each potential departure factor to advance one of the specified goals." *United States v. Carter*, 122 F.3d 469, 473 (7th Cir.1997) (citing *Koon*).

Courts have broadly interpreted *Koon* and considered downward departures in a number of cases in which a downward departure may not have been applicable previously. *See, e.g.*, *United States v. Brennick*, 134 F.3d 10, 14 (1st Cir.1998) (finding defendant's alleged intent to eventually pay withheld taxes to government could take the defendant's case out of the heartland of tax evasion cases); *United States v. Lipman*, 133 F.3d 726, 730 (9th Cir.1998) (finding that district court could have the authority to consider cultural assimilation as a basis for a downward departure); *United States v. Kapitzke*, 130 F.3d 820, 824 (8th Cir.1997) (affirming downward departure based on defendant's post-offense rehabilitation efforts); *Brock*, 108 F.3d at 35 (remanding case for deter-

mination of whether downward departure was warranted for post-offense rehabilitation); *United States v. Rioux*, 97 F.3d 648, 663 (2d Cir.1996) (affirming downward departure on the basis of defendant's kidney failure and charitable good works); *United States v. Shasky*, 939 F.Supp. 695 (D.Neb.1996) (granting downward departure because defendant was homosexual police officer). The circumstances present in Coleman's case may justify a downward departure as well. We, however, decline to determine ourselves whether the factors alleged by Coleman are present to such a degree as to warrant a downward departure in this case. We leave that to the district court, which as noted in *Koon*, is in the best position to determine whether the case is so unusual as to warrant a departure. *See Koon*, 518 U.S. at 98, 116 S.Ct. 2035 (noting that district court enjoys an "institutional advantage" over the appellate court in making such a determination).[5]

## III. Aggregation of Factors

■■■ Coleman argued that several circumstances took his case out of the "heartland" of crack cocaine cases, and thus, justified a downward departure.[6]

**5.** In a separate dissent, Judge Kennedy discusses U.S.S.G. § 5K2.12. However, that discussion misunderstands our position in this case. As an initial point, the reason that the district court may consider the government's investigative techniques as a basis for departure is not so that the court can "punish" the government, but so that the court can perform its duty as is required by *Koon–i.e.*, determining whether such techniques take Coleman's case out of the "heartland" of crack-cocaine cases. Further, Judge Kennedy's concern that Coleman failed to establish "how the government's sting operation affected him," *post* at 363, is ill-founded, for the district court, in satisfying its responsibility under *Koon*, is perfectly free to conduct a hearing to determine whether Coleman can adduce additional evidence in support of his position.

Further, despite Judge Kennedy's statement to the contrary, § 5K2.12 has no relevance to this case considering that Coleman did not argue (and we do not suggest) that he com-

mitted the offense because he was facing "a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency" or due to "personal financial difficulties." *See* U.S.S.G. § 5K2.12. Indeed, Coleman has consistently argued that he was improperly targeted because of his race and parolee status, and thus, we have neither explicitly nor implicitly expressed a "concern" regarding possible coercion or duress issues.

**6.** In addition to challenging various aspects of Secrete's investigatory techniques, Coleman further raised a "sentencing entrapment" argument before the district court, namely that Secrete induced him to sell crack cocaine due to the higher penalties imposed for such offenses. We have not officially recognized a "sentencing entrapment" argument as a basis for downward departure. *See, e.g., United States v. Jones*, 102 F.3d 804, 809 (6th Cir. 1996). However, in *United States v. Mason*,

Coleman garners substantial support for his argument from *Koon*, and from decisions of other circuits as well. Indeed, the Sentencing Guidelines explicitly acknowledge that a combination or aggregation of factors could distinguish a case from the "heartland" of cases. U.S.S.G. § 5K2.0 comment.[7] As the Supreme Court noted, U.S.S.G. § 5K2.0 is designed to allow district courts to "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon*, 518 U.S. at 113, 116 S.Ct. 2035. Further, Justice Stevens noted in his separate opinion in *Koon* that he did not "understand the opinion to foreclose the District Court from basing a downward departure on an aggregation of factors each of which might in itself be insufficient to justify a departure." *Koon*, 518 U.S. at 114, 116 S.Ct. 2035 (Stevens, J., concurring in part and dissenting in part).

In addition, the Tenth Circuit recently decided two cases addressing the issue of whether the aggregation of factors may warrant a downward departure under *Koon*. *See United States v. Jones*, 158 F.3d 492 (10th Cir.1998); *United States v. Whitaker*, 152 F.3d 1238 (10th Cir.1998). In *Jones*, the district court, relying on the comment to U.S.S.G. § 5K2.0, departed downward, finding that a combination of eleven factors warranted the departure. *Jones*, 158 F.3d at 496. On appeal, the government argued that each of the grounds relied upon by the district court was impermissible individually, and thus, even a combination of "wholly inadequate" factors could not justify a departure. *Id.* at 497. In affirming the district court's sentencing decision, the Tenth Circuit applied the four-prong analysis in *Koon* to determine whether the district court properly departed downward. After undertaking such an analysis, the court rejected the government's argument, finding that "[a] factor may be considered in the aggregate if it is 'atypical,' even though it may not be sufficient, in and of itself, to support a departure." *Id.* at 499; *see also United States v. Collins*, 122 F.3d 1297, 1308 (10th Cir.1997). Similarly, in *Whitaker*, the district court also erroneously concluded that it lacked the authority to depart downward based on circuit precedent. *Whitaker*, 152 F.3d at 1239-40. In *Whitaker*, the Tenth Circuit noted that because the district court did not correctly understand its authority to depart downward, the court of appeals had jurisdiction to review the lower court's decision. *Id.* at 1240; *see also Landers*, 39 F.3d 643 at 649. The Tenth Circuit again reiterated that only those factors explicitly prohibited by the Guidelines may never properly form the basis for a downward departure, but "[a]ll others potentially may provide a basis for departure under appropriate circumstances." *Whitaker*, 152 F.3d at 1240 (quoting *Brock*, 108 F.3d at 35). Finally, the court determined that the defendant's

No. 96–5119, 1997 WL 560062, at *3 (6th Cir. Sept.5, 1997), the court noted that it "assumed, without deciding, that if the facts of a case demonstrate that the government manipulated or otherwise entrapped the defendant, for the purpose of increasing his sentence, the defendant may be entitled to relief." *Id.* (citing several unpublished cases); *see also United States v. Brown*, No. 95–6683, 1997 WL 159372, at *2 (6th Cir. Apr.3, 1997)(per curiam). Based on the facts of Coleman's case, we also see "no need to address the larger issue of whether this circuit should recognize sentencing entrapment as a valid basis for downward departure." *See Brown*, 1997 WL 159372, at *3.

7. The comment recognizes:

The possibility of an extraordinary case that, because of a combination of such characteristics or circumstances [not ordinarily relevant to a departure], differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case. However, the Commission believes that such cases will be extremely rare.

U.S.S.G. § 5K2.0 Commentary.

"drug rehabilitation efforts" could possibly provide a basis for departure and remanded the case for the district court to decide. *Id.* at 1241. We find the Tenth Circuit's analysis in *Jones* and *Whitaker* persuasive. These two cases reiterate the proposition that we have stated earlier: the district court must follow the Supreme Court's guidance in *Koon,* and under the appropriate circumstances as determined by the district court, *any* non-prohibited factor may provide the basis for a downward departure.[8]

Thus, we hold that pursuant to *Koon,* the district court is required to consider the particular factors of the case as a whole, and any combination thereof, in determining whether there were sufficient extraordinary factors to take Coleman's case out of the "heartland" of crack cocaine cases. Morever, in the event that a defendant brings a downward departure claim in an attempt to abuse the aggregation paradigm set forth herein, we believe that district courts are perfectly equipped to handle such situations by granting appropriate procedural relief. *See, e.g., Sierra Club v. Morton,* 405 U.S. 727, 758, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) (Blackmun, J., dissenting) ("We need not fear that Pandora's box will be opened or that there will be no limit to the number of those who desire to participate in ... litigation. The courts will exercise appropriate restraints just as they have exercised them in the past."). Accordingly, we hold that the district court erred by failing to consider all of the particular circumstances

of this case to determine whether the case was removed from the "heartland" of crack cocaine cases.

## IV.

For the reasons set forth above, we **REVERSE** and **REMAND** the district court's sentencing decision for reconsideration consistent with this opinion. We note that if the district court determines that there are no factors present to such an extraordinary degree as to warrant a departure, the sentence should not be disturbed.

KENNEDY, Circuit Judge, dissenting.

While I concur in Judge Norris' dissenting opinion, I write separately because I believe there are other respects in which the Majority errs.

It seems to me that the Majority's concern regarding the targeting of parolees in this sting investigation is because of the duress and coercion resulting from the parolee's circumstances. If so, U.S.S.G. § 5K2.12, Coercion and Duress, which authorizes the judge to depart downward "[i]f defendant committed the offense because of serious coercion, blackmail, or duress under the circumstances not amounting to a complete defense ...", is applicable and controlling here. As a result, improper investigatory techniques would be factors considered in the Sentencing Guidelines and this case falls within the "heartland" under § 5K2.12.[1] *See*

---

8. This court and other circuits have also applied the reasoning that in light of *Koon,* the district court must at least consider a myriad of factors in deciding whether to depart downward. *See, e.g., United States v. Crouse,* 145 F.3d 786, 790 (6th Cir.1998)(civic involvement); *United States v. Owens,* 145 F.3d 923, 928 (7th Cir.1998)(active role in supporting family); *United States v. Faulks,* 143 F.3d 133, 138 (3d Cir.1998)(extraordinary acceptance of responsibility); *Lipman,* 133 F.3d at 730 (cultural assimilation).

1. As the majority correctly notes, courts have used U.S.S.G. § 5K2.12 as a means for "downward departures in cases where the

government has induced a defendant to commit a crime, but the defense of entrapment is not warranted." *See United States v. McClelland,* 72 F.3d 717, 724–25 (9th Cir.1995). Although *Koon* precludes courts from refusing to consider relevant factors other than those proscribed by the Sentencing Commission, the *Koon* decision does not necessarily alter the manner in which courts classify government misconduct as a type of coercion or duress under U.S.S.G. § 5K2.12. I thus agree with the Majority that improper investigatory techniques may warrant a downward departure, but I would add that this is true only if the defendant has demonstrated duress, coer-

*Koon v. United States,* 518 U.S. 81, 94, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). A departure may or may not be warranted depending on the factual determinations, although the guideline specifically states that personal financial difficulties do not warrant a decrease in the sentence.

Further, in applying § 5K2.12, the effect of the coercive conduct and duress on the defendant is what is to be measured. *See* § 5K2.12 ("The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be.").[2] The Majority opinion, however, makes no reference to the effect of the government's conduct on the defendant, but instead seems to focus on what it is that the government is charged with doing. I do not believe that the guidelines permit a downward departure under § 5K2.12 or even § 5K2.0 simply to punish the government without a showing that the government misconduct affected the culpability of the defendant. *See United States v. Montoya,* 62 F.3d 1, 5 (1st Cir.1995) (stating that unlike sentencing manipulation, which focuses on government misconduct, "the guidelines, and by extension departures from the guidelines, are centrally concerned with a proper sentence for the defendant in light of his own conduct and his own criminal history"); *United States v. Janis,* 69 F.3d 914, 915 (8th Cir.1995) ("A

district court cannot depart where the only purpose of the departure is to deter government misconduct."); *United States v. Williams,* 978 F.2d 1133, 1136 (9th Cir. 1992) (holding that a downward departure is inappropriate when the only purpose of the departure is to deter government misconduct); *but cf. United States v. Nolan–Cooper,* 155 F.3d 221, 243 (3rd Cir.1998) (improper government investigatory conduct may remove case from the heartland and warrant a downward departure). Here, the defendant offered nothing as to how the government's sting operation affected him.[3] *See United States v. Santoyo,* 146 F.3d 519, 525–26 (7th Cir.1998) (holding that alleged government "cajoling," without any proof of a Due Process Clause violation or a claim of Defendant's lack of predisposition, did not remove case from "heartland."). It would be difficult to do so since he engaged in five drug transactions, the last two after a period of time spent in jail. Although *Koon* refers to mitigating factors, I do not see how government misconduct, unless it affected the defendant's conduct so that it lessens the seriousness of what he or she did, can be a mitigating factor. For these reasons and those stated by Judge Norris, I respectfully dissent.

ALAN E. NORRIS, Circuit Judge, dissenting.

Although the majority opinion omits the most objectionable portion of the original

---

cion, or some additional factor that merits a removal from the "heartland" of § 5K2.12.

**2.** In *Koon,* the Court required the departure factors to have an effect on the defendants. 513 U.S. at 94, 115 S.Ct. 537. The effect of the victim's conduct on the defendants' conduct was critical to the departures expressly provided by the guidelines. *Id.* at 101–05, 115 S.Ct. 537. It was the fact that the widespread publicity would make the defendants more likely to be targets of abuse in prison that justified the second approved departure. *Id.* at 112, 115 S.Ct. 537. It was the additional burden on the defendants of state and federal prosecutions for the same conduct that justified the final departure. *Id.* The Court sustained these three departures.

**3.** In some ways, the majority opinion seemingly refers to sentencing manipulation, which this Circuit has never adopted, *see United States v. Jones,* 102 F.3d 804, 809 (6th Cir.1996), or the outrageous government conduct defense. *See United States v. Sanchez,* 138 F.3d 1410, 1413 (11th Cir.1998). Such claims, both variations on sentencing entrapment, focus on whether the government's conduct is so outrageous that it offends the due process requirement of fundamental fairness. In making this determination, the courts do not necessarily consider the effect of the misconduct on the defendant. *See Sanchez,* 138 F.3d at 1414.

panel's opinion—the portion which occasioned my dissent and led to en banc review of this case—I remain of the view that the majority does not fairly assess the district judge's understanding of her authority and discretion to depart.

The majority concludes that the district court did not properly consider Coleman's request for a downward departure based upon the "investigative techniques:" employed by the ATF because it looked at the issue from a procedural, rather than a substantive, perspective. A review of the record leads me to a different conclusion. The district court initially observed that it thought the argument regarding the ATF's investigative techniques was "not a downward departure issue" but more properly a selective prosecution issue that should have been raised in a motion to dismiss. Coleman's attorney then reminded the court that he was not arguing selective prosecution but was instead asking for a downward departure:

> [T]his is not a claim of selective prosecution, and the reason it was not brought by motion to dismiss indictment is we are not claiming this as a case of selective prosecution.... It's more of a case of selective law enforcement....
>
> ....
>
> ...The reason this is a grounds for departure is simply because this takes this case out of the heartland of your typical drug case. That is where perhaps there's someone who is actively involved in dealing narcotics and the government then investigates and catches him in the act. This is a case where Mr. Secretti was out soliciting for drug cases and firearm cases and, frankly, Your Honor, the departure section in the guidelines is not meant to be an all-inclusive section, and I think the courts that have been inclined to look at the various factors that have been listed by the Sentencing Commission in the original guidelines, but the [Guidelines also allow] that if there is a circumstance, mitigating circumstances of a kind that is not included in your normal case, your

general case, that the Court can consider that for departure, and it's strictly a matter for discretion.

The district court then proceeded to consider the merits of that argument, which I note essentially tracks the reasoning set forth in the majority's opinion, before it concluded:

> I understand that the guidelines make exceptions for exceptional circumstances but I think there, I think you need more to bring this into that realm than your assertion that Mr. Coleman was being solicited by Agent Secretti. In fact, you know the government's position is exactly the opposite, and there isn't enough to warrant having a hearing on it. I mean, all you've given me as an exhibit here is the business card, no affidavit, no—nothing in terms of hard evidence of this, and even if you did, I still don't—I still don't see it as an issue which would entitle this defendant to a departure, so motion denied.

It is apparent that the district court considered whether Coleman's assertion amounted to a proper basis for a downward departure but concluded that his claim was so lacking in merit that it deserved summary rejection. The court did not, as asserted by the majority, believe it "lacked the authority and discretion to depart downward." I fail to see how the district court's conclusion can be said to be the product of an abuse of discretion when one considers the Supreme Court's admonition that sentencing courts must "bear in mind the Commission's expectation that departures based upon grounds not mentioned in the Guidelines will be highly infrequent." *Koon*, 518 U.S. at 96, 116 S.Ct. 2035 (punctuation omitted).

Because I believe that the record reveals that the district court properly considered all of the permissible grounds for departure raised by defendant at sentencing, I respectfully dissent.