UNITED STATES of America, Plaintiff,

v.

Dena Lynne BOVEE, and Tim Elliott Bovee, Defendants.

No. CRIM. 02–50023.

United States District Court, E.D. Michigan, Southern Division.

Nov. 13, 2003.

David A. Koelzer, Federal Defender, Federal Defender Office, Flint, MI, for Dena Lunne Bovee.

James L. Witzel, Witzel, Fawley, East Lansing, MI, David A. Merchant, II, Merchant & Maddaloni, Lansing, MI, for Tim Elliott Bovee.

Nancy A. Abraham, U.S. Attorney's Office, Flint, MI, for U.S. Attorneys.

## OPINION AND ORDER DENYING MOTION FOR A DOWNWARD DEPARTURE

GADOLA, District Judge.

Before the Court is Defendants' motion for a downward departure. For the reasons set forth below, the Court will deny the motion.

## I. BACKGROUND

On April 10, 2002, a federal grand jury returned a two-count indictment against Defendants. Count One charged Defendants with conspiracy to manufacture marijuana. *See* 21 U.S.C. § 846. Count Two charged Defendants with manufacturing marijuana, *see* 21 U.S.C. § 841, and aiding and abetting, *see* 18 U.S.C. § 2.

The trial date was initially set for June 10, 2002. Upon the parties' stipulation this date was adjourned. At a hearing on July 30, 2002, Defendants entered pleas of guilty to each count without Rule 11 plea agreements. Fed.R.Crim.P. 11. However, the pleas were entered on the condition that Defendants retained the right to contest the number of marijuana plants at issue. *See* 21 U.S.C. § 841(b)(1)(B)(vii). The parties then stipulated to having the Court conduct a hearing, after which the Court would determine the number of marijuana plants for which Defendants would be held accountable.

The Court held the aforementioned evidentiary hearing on August 22 and 23, 2002. Because the complexities of the case, the Court suspended the hearing and ordered briefing. After two stipulated extensions of the briefing period and a stipulation to reschedule a hearing date, the Court held a hearing on November 4, 2002, to hear argument from both sides. On November 22, 2002, the Court issued an opinion and order concluding that the Government proved beyond a reasonable doubt that Defendants were guilty of (1) knowingly conspiring with each other to manufacture more than one hundred marijuana plants and (2) knowingly manufacturing and aiding and abetting each other to manufacture more than one hundred marijuana plants. *See United States v. Bovee*, 233 F.Supp.2d 864, 874 (E.D.Mich. 2002) (Gadola, J.).

Sentencing was initially set for February 25, 2003. On January 27, 2003, Mr. Bovee moved for a downward departure and notified the Court of an unresolved objection to the presentence investigation report. After two stipulations to adjourn the sentencing hearing, the Court began the sentencing hearing on June 11, 2003. At the hearing, Mrs. Bovee joined Mr. Bovee's downward departure motion and objection to the presentence investigation report. At the hearing, the Court heard argument from both sides. Because of the complexities of the case, the Court ordered the parties to submit supplemental sentencing memorandums. Defendants filed a timely memorandum on July 2, 2003, and, after three stipulations to extend the Government's response period, the Government filed its memorandum on September 29, 2003.

On September 29, 2003, the parties also submitted a stipulation resolving the objection to the presentence investigation report. The resulting stipulated order of October 14, 2003, ruled that each Defendant qualified for the so-called safety valve provision, *see* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2, which allows the Court to sentence below the statutory minimum

of sixty months, *see* 21 U.S.C. § 841(b)(1)(B). Moreover, because the stipulation resolved the Defendants' objection, the only remaining sentencing dispute before the Court is Defendants' motion for a downward departure.

## II. STANDARD OF REVIEW

■ "[D]issatisfaction with the available sentencing range or a preference for a different sentence than that authorized by the guidelines is not an appropriate basis for a sentence outside the applicable guideline range." *United States v. Kuhn,* 345 F.3d 431, 439–40 (6th Cir.2003) (quoting *United States v. Rapanos,* 235 F.3d 256, 260 (6th Cir.2000)). Rather, "[a] downward departure is permitted when there is a mitigating factor that has not been adequately considered in formulating the Sentencing Guidelines." *United States v. Coleman,* 188 F.3d 354, 358 (6th Cir.1999) (citing 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0).

■ "Because the [United States Sentencing] Commission [does] not adequately take into account cases that are, for one reason or another unusual, such [mitigating] factors will normally not be considered in the typical heartland of cases embodying the conduct that each Guideline describes." *Coleman,* 188 F.3d at 358 (quoting *Koon v. United States,* 518 U.S. 81, 93, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)) (internal quotations omitted). "A court may grant a downward departure, then, if circumstances exist which take the case out of the typical heartland of cases embodied by the Guideline" *Coleman,* 188 F.3d at 358 (citing *Koon,* 518 U.S. at 93–94, 116 S.Ct. 2035) (internal quotations omitted). In other words, "before a sentencing court may depart from the guideline range, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the

Guideline." *United States v. Reed,* 264 F.3d 640, 646 (6th Cir.2001) (quoting *Koon,* 518 U.S. at 98, 116 S.Ct. 2035) (internal quotations omitted).

"There are a potentially infinite number of factors which may warrant a departure." *Coleman,* 188 F.3d at 358. "The Guidelines Manual offers some instruction on which factors make a case atypical." *Reed,* 264 F.3d at 646 (internal quotations omitted). If a factor listed in the Manual is "disfavored" by the Commission, "a downward departure should not be granted unless the case is exceptional." *Id.* (internal quotations omitted; citation omitted). Furthermore, "[i]f a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland." *Coleman,* 188 F.3d at 358 (quoting *Koon,* 518 U.S. at 96, 116 S.Ct. 2035) (internal quotations omitted; emphasis omitted); *see also Reed,* 264 F.3d at 646.

## III. ANALYSIS

Defendants raise four arguments in favor of their downward departure motion.

■ 1. Defendants first argue for a downward departure on a "lesser harms" theory. Defendants maintain that growing their own marijuana for the purported medical use by Mr. Bovee allowed Defendants to "avoid dealing with the 'criminal element' that [they] would have had to come into contact with to purchase the marijuana thereby reducing the risk to [themselves] and [their] family." Def. Mot. at 4. In other words, Defendants contend that purchasing marijuana is a greater harm than manufacturing marijua-

na and conspiring to manufacture marijuana.[1]

The Commission's applicable policy statement provides that "a reduced sentence may be appropriate" where (1) "a defendant commits a crime to avoid a perceived greater harm," and (2) "the circumstances significantly diminish society's interest in punishing the conduct." U.S.S.G. § 5K2.11; *see also United States v. Fiterman*, 732 F.Supp. 878, 884 (N.D.Ill.1989). "Where the interest in punishment or deterrence is not reduced, a reduction in sentence is not warranted." U.S.S.G. § 5K2.11.

In this case, society's interest in punishing and deterring Defendants' conduct is not reduced. Defendants paint two alternative pictures. In the first picture, Mr. Bovee enters the illegal drug market, where the potential for violence is high, in order to purchase the marijuana he allegedly requires to allay his medical needs.[2] In the second picture, Defendants remove themselves from all the dangers of the illegal drug market by electing to grow Mr. Bovee's marijuana at home. Defendants argue that this second picture presents lesser harms. The Court disagrees. The second picture is rife with equal, or possibly greater, harms. In manufacturing marijuana at home, Mr. Bovee guided Mrs. Bovee into becoming an illegal drug manufacturer and criminal conspirator. If Mr. Bovee had simply purchased marijuana, the harm of Mrs. Bovee engaging in criminal activity could have been avoided. Further, by manufacturing a large quantity of marijuana at home, Defendants possessed a surplus of marijuana, and this surplus led to the harm of distributing marijuana to others, including their son and Mr. Bovee's co-workers. *See* Def. Memo. at 3. This proliferation of illegal drugs and corruption of others could have

---

1. Defendants' passing reference to a recent California "medical marijuana" case is inapplicable here. *See* Def. Memo. at 6–7. The lesser harms theory did not factor into the disposition of that case. *See United States v. Rosenthal*, 266 F.Supp.2d 1091, 1099 n. 2 (N.D.Cal.2003).

The Court further notes that the Supreme Court's recent decision to deny a writ of certiorari in a different "medical marijuana" case does not alter the result here. Recently, the Supreme Court elected not to review a Ninth Circuit opinion affirming a district court order enjoining the Federal Government from revoking a physician's license to prescribe controlled substances or conducting an investigation of a physician that might lead to such revocation, when the basis for the Government's action is solely the physician's professional recommendation of the use of "medical marijuana." *See Conant v. Walters*, 309 F.3d 629, 632, 634–39 (9th Cir.2002), *cert. denied*, — U.S. —, 124 S.Ct. 387, — L.Ed.2d —, 2003 WL 21692652, at *1 (2003). The Ninth Circuit case dealt with a narrow situation concerning physicians, and it is inapplicable here: while it may be permissible for a physician to discuss marijuana use in certain limited circumstances, it is still impermissible to manufacture marijuana in situations such as the one before this Court. *See United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 491–96, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001) ("In the case of the Controlled Substances Act, the statute reflects a determination that marijuana has no medical benefits worthy of an exception (outside the confines of a Government-approved research project) .... Indeed, for purposes of the Controlled Substances Act, marijuana has 'no currently accepted medical use' at all.... [W]e hold that medical necessity is not a defense to manufacturing and distributing marijuana." (quoting 21 U.S.C. § 812)); *see also Conant*, 309 F.3d at 634 (distinguishing *Conant* from *Oakland Cannabis* ).

2. Defendants' motion alleges that Mr. Bovee has back and neck pain as well as difficulty sleeping and eating; purportedly, marijuana helps these medical conditions. However, contrary to the dire situation suggested in Defendants' motion, the presentence investigation report includes the following sentence: "Mr. Bovee states he is in good health." Present. Invest. Rep. (Mr. Bovee) at ¶ 32; *see also* Gov't Memo. at 3–4.

been averted had Defendants not manufactured marijuana at home. *Cf. Fiterman*, 732 F.Supp. at 884. Given these considerations, society's interest in punishing Defendants precludes a downward departure on a lesser harms theory. *See id.*

More importantly, deterring others who may be attracted to the manufacture of illegal drugs also precludes lesser harms relief. *See* U.S.S.G. § 5K2.11; *Fiterman*, 732 F.Supp. at 884. To conclude otherwise would be to encourage other similarly-situated individuals to take up criminal activity. *See United States v. Torres*, 71 Fed. Appx. 103, 105 (3d Cir.2003). Rather than pursue alternative legitimate medical means to alleviate Mr. Bovee's purported medical conditions or simply accept the medical challenges of his life, as many law-abiding Americans suffering with chronic pain do every day, Defendants elected to ignore society's interest in preventing the manufacture of illegal drugs and in preventing criminal conspiracies.[3] *Cf. id.* In a situation such as this, society's interest in deterrence is not reduced; it is arguably increased. Society's interest in deterring others from following a criminal path as a means of improving their lot in life requires that the Court deny Defendants' motion for a downward departure on lesser harms grounds. *See* U.S.S.G. § 5K2.11.

■ 2. Defendants also seek a downward departure on "aberrant behavior" grounds. The Commission's pertinent policy statement states, in relevant part, that "a sentence below the applicable guideline range may be warranted in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior." U.S.S.G. § 5K2.20. The Commission defines aberrant behavior as "a single

criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; *and* (C) represents a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. § 5K2.20, App. Note 1 (emphasis added).

Under this definition, Defendants' argument in favor of aberrant behavior relief borders on the preposterous. In pleading guilty, Defendants admitted to a criminal conspiracy that ran from at least the fall of 2001 until January 2002. At the evidentiary hearing, the Government positively established that Defendants were engaged in an intricate and sophisticated drug manufacturing operation, which included a grow room, grow lights, and fans. *See, e.g.*, Tr. at 14–16. Furthermore, Defendants cycled their marijuana plants; that is, the plants were at different stages of growth so that a fresh crop was always available. *See, e.g., id.* This operation required a considerable amount of planning: for example, acquiring the initial seeds; acquiring the pots, lamps, fans, and other necessary supplies; maintaining and caring for the plants; hiding the plants in their basement; drying the marijuana; and preparing the marijuana for consumption. *See also* Gov't Memo. at 3. Therefore, it cannot be said that Defendants' criminal conduct was committed without significant planning and was of limited duration; accordingly, the Court will deny Defendants' motion for a downward departure on aberrant behavior grounds. *See* U.S.S.G. § 5K2.20.

■ 3. Defendants further argue that a downward departure is required due to the "disparity of state and federal sentences." Def. Mot. at 6. Defendants claim

---

**3.** In their motion, Defendants rely on *United States v. Carvell*, 74 F.3d 8 (1st Cir.1996). In this case, however, there is no hint that Defendants were growing marijuana as an alternative to Mr. Bovee committing suicide; thus, the extreme and narrow situation presented in *Carvell* is inapplicable here. *See id.* at 12.

that had they been charged and convicted of the same offenses in state court, the "guidelines on the manufacture of marijuana and conspiracy to manufacture marijuana would be 0 to 17 months." *Id.* Defendants neglected to provide the Court with any citations to state legal authority to support this statement.

Nevertheless, this argument has been weakened by recent developments. As stated *supra*, the Court recently ruled, upon the stipulation of the parties, that each Defendant qualified for the safety valve provision, which allows the Court to sentence below the statutory minimum of sixty months. Thus, Defendants do not face a federal-state disparity of sixty months versus zero to seventeen months. Rather, as a result of the safety valve, Defendants (with a Category I criminal history and a Level 17 offense level) confront a guideline range of twenty-four to thirty months. *See* U.S.S.G. § 5C1.2(a)-(b); *see also* Present. Invest. Reps. Con-

sequently, the federal-state disparity in this case is notably diminished.

Furthermore, the federal-state sentencing disparity is an impermissible ground for a downward departure in this case. That is because this disparity is not sufficiently unusual or atypical to take this case out of the heartland. *See United States v. Williams,* 282 F.3d 679, 681 (9th Cir.2002). Under the reasoning advanced by Defendants, virtually every criminal defendant facing Defendants' sentencing situation in federal court in Michigan "would be entitled to a downward departure, because they all presumably would be entitled to a lesser sentence in [Michigan] state court." *Id.* at 682. "Allowing this result to stand would undermine the goal of uniformity that Congress sought to ensure in enacting the Guidelines, because every federal sentence would become dependent upon the practice of the state within which the federal court sits." *Id.; see also United States v. Schulte,* 144 F.3d 1107, 1110–11 (7th Cir.1998);[4] *United States v. Snyder,* 136 F.3d 65, 68–70 (1st Cir.1998);[5] *United*

4. "The Guidelines seek uniformity, not with respect to federal and state sentences, but rather among federal sentences for similar conduct.... A disparity is not 'unjustified' simply because the federal and relevant state governments impose different punishments on similar conduct. One cannot say—as is required to remove a case from the heartland-that such a disparity occurred as a result of an improper application of the Guidelines. We conclude that a disparity between federal and state sentences does not take a case out of the heartland of cases contemplated by the Sentencing Commission. Indeed, recognizing this ground for departure would *undermine the operation of the Guidelines.* If courts were to depart from the sentences mandated by the Guidelines in deference to numerous and varying standards in the state systems, they would *eviscerate the uniformity in federal sentencing* that is the raison d'etre of the Sentencing Reform Act of 1984. Any disparity between federal and state sentences, therefore, is ·'justified' by the structure of the Guidelines and cannot remove a case from

the heartland." *Schulte,* 144 F.3d at 1110–11 (citations omitted; emphasis added).

5. "If the guidelines' goal is to promote uniformity among federal courts when imposing sentences for federal crimes, then departures aimed at alleviating federal/state sentencing disparity are *flatly incompatible* with it. Endeavoring to make a federal sentence more closely approximate that which a state court might impose for similar criminal activity would *recreate the location-based sentencing swings that Congress sought to minimize* when it opted for a guideline paradigm.... The fact that the states impose different and varied sentences for criminal conduct that may also transgress federal law is about as obvious as a hippopotamus at a tea party. It is implausible to suppose that the Commission overlooked this large reality and therefore failed to account for it in formulating the guidelines .... In sum, federal/state sentencing disparity is not 'a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in for-

*States v. Searcy,* 132 F.3d 1421, 1422 (11th Cir.1998) (per curiam).[6] Therefore, Defendants are not entitled to a downward departure on federal-state disparity grounds.

■ 4. Lastly, Defendants challenge the application of the safety valve floor to their case. Because Defendants qualify for the safety valve, the Court is allowed, as stated *supra,* to sentence below the sixty-month statutory minimum. *See* U.S.S.G. § 5C1.2(a). However, there is an additional consequence of qualifying for the safety valve in this sentencing situation: the safety valve floor of § 5C1.2(b) is triggered. This section provides:

> In the case of a defendant (1) who meets the [safety valve, i.e., the criteria set forth in § 5C1.2(a) ]; and (2) for whom the statutorily required minimum sentence is at least five years, the offense level applicable from Chapters Two (Offense Conduct) and Three (Adjustments) shall be not less than level 17.

U.S.S.G. § 5C1.2(b). As detailed in the presentence investigation report, each Defendant's offense level would be less than Level 17 due, in part, to a reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1; Present. Invest. Reps. at ¶ 21. Defendants seek a downward departure because, under § 5C1.2(b), they will be "afforded no credit for acceptance of responsibility." Def. Memo. at 6. Defendants contend that the "Commission did not intend that defendants such as [Mr. and Mrs.] Bovee be stripped of their credit for acceptance of responsibility under the . . . 'safety valve.'" *Id.*

The Court disagrees. As with the federal-state disparity issue *supra,* this factor is not sufficiently unusual or atypical to take this case out of the heartland. Under Defendants' theory, virtually every criminal defendant who accepts responsibility and whose offense level would be below Level 17 were it not for the safety valve floor would be entitled to a downward departure below the floor. Such a result routinely would render the floor meaningless. Additionally, acceptance of responsibility is a Chapter 3 adjustment, *see* U.S.S.G. § 3E1.1, and, in drafting the text of the safety valve floor, the Commission explicitly took account of Chapter 3 adjustments, *see* U.S.S.G. § 5C1.2(b). Thus, it cannot be said that the lack of credit for acceptance of responsibility is a "factor that has not been adequately considered in formulating the Sentencing Guidelines." *Coleman,* 188 F.3d at 358. Therefore, given the structure and theory of the relevant individual guidelines as well as the Guidelines as a whole, this factor is insufficient to take the case out of the Guideline's heartland. *See id.* As a result, the Court will deny Defendants' motion for a downward departure.

On a final note, Defendants maintain that "[w]hile it is arguable that none of [their downward departure arguments] alone would constitute enough to warrant a departure, . . . taken as a whole, in the totality, Defendant[s] believe[ ] a downward departure is justified." Def. Mot. 3. Again, the Court disagrees. Because all four of Defendants' downward departure arguments clearly lack merit, viewing them all as a whole does not alter the

---

mulating the guidelines that should result in a sentence different from that described.' 18 U.S.C. § 3553(b)." *Snyder,* 136 F.3d at 69–70 (citations and footnotes omitted; emphasis added).

**6.** "Allowing departure because the defendant could have been subjected to lower state penalties would undermine the goal of uniformity which Congress sought to ensure: federal sentences would be dependent on the practice of the state within which the federal court sits." *Searcy,* 132 F.3d at 1422.

Court's conclusion that Defendants are not entitled to a downward departure.

## IV. CONCLUSION

**ACCORDINGLY, IT IS HEREBY OR-DERED** that Defendants' motion for a downward departure is **DENIED**.

**IT IS FURTHER ORDERED** that the sentencing hearing in this criminal case shall continue within **TWENTY–ONE (21) DAYS** of the filing of this order.

**SO ORDERED.**