UNITED STATES of America,
Plaintiff–Appellee,

v.

John U. EBOLUM, a.k.a. Francisco Achamba, a.k.a. Festus Achamba, a.k.a. Festus Francis Ugoh Achamba, Defendant–Appellant.

No. 95–5070.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 13, 1995.

Decided Dec. 21, 1995.

**36**

James E. Arehart, Asst. U.S. Attorney (argued and briefed), Joseph L. Famularo, U.S. Attorney, Lexington, KY, for Plaintiff-Appellee.

F. Dennis Alerding (argued and briefed), Covington, KY, for Defendant-Appellant.

: The Honorable John W. Potter, United States District Judge for the Northern District of Ohio,

Before: KENNEDY and MOORE, Circuit Judges; POTTER, District Judge.*

MOORE, Circuit Judge.

Defendant-Appellant John U. Ebolum ("Ebolum") appeals his sentence because the district court denied his motion for downward departure from the United States Sentencing Guidelines (the "Guidelines") based on his status as a deportable alien. For the reasons stated below, we affirm.

**I.**

In May 1985, Ebolum (under the name Festus U. Achamba) was convicted of importing heroin. After serving part of his sentence, he was deported to Nigeria. In September 1989, Ebolum re-entered the United States illegally. On July 14, 1994, Ebolum was arrested at the Cincinnati/Northern Kentucky International Airport. Ebolum was indicted on one count of illegally entering and being found in the United States in violation of 8 U.S.C. § 1326, which prohibits deported aliens from entering or being found in the United States without the prior permission of the Attorney General. Ebolum pleaded guilty, and the district court sentenced him to 41 months of imprisonment and 2 years of supervised release.

Under U.S.S.G. § 2L1.2, the Guidelines range for Ebolum's offense was 41 to 51 months of incarceration and 2 to 3 years of supervised release because Ebolum had been deported after a conviction for an aggravated felony. Ebolum requested a downward departure based on his status as a deportable alien. The district court sentenced Ebolum to the minimum sentence allowed under the Guidelines, but denied Ebolum's motion for a downward departure. The following discussion of the downward departure motion took place at sentencing:

MR. ALDERING: 3553(b) says the court shall impose a sentence of the kind and within the range referred to in subsection (a)(4) unless the court finds there exists an aggravating or mitigating circumstance not

sitting by designation.

adequately taken into consideration by the sentencing guidelines.

THE COURT: What's the circumstance that wasn't taken into consideration by the Sentencing Commission?

MR. ALDERING: That he is a deportable alien and subject to different treatment in the penitentiary system than everybody else.

THE COURT: Everybody convicted of illegal entry in the United States is a deportable alien. How can you say it wasn't considered by the Sentencing Commission?

MR. ALDERING: Every citizen isn't a deportable alien and every citizen has certain privileges that he won't have, halfway house treatment, education. Other things I referred to in there are furloughs, visitation.... Deportable aliens are segregated from the population and treated differently because they are going to be kicked out of the country anyhow.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: ... I think the Sentencing Commission, if they are going to impose guidelines for illegal entry of the United States, they know the person is a deportable alien and they would know what kind of incarceration he would have. I don't think—I think I'm bound by the guideline. I see no grounds for departure.

## II.

▮ A district court's discretionary decision not to depart downward from the Guidelines range ordinarily is not appealable. *United States v. Byrd,* 53 F.3d 144, 145 (6th Cir.1995); *United States v. Dellinger,* 986 F.2d 1042, 1043–44 (6th Cir.1993). An appeal may be taken, however, when the district court believed that it lacked any authority to depart downward as a matter of law. *United States v. Landers,* 39 F.3d 643, 649 (6th Cir.1994); *Dellinger,* 986 F.2d at 1044. The district court's determination that it lacked authority to depart downward is a matter of Guidelines interpretation that we review de novo. *United States v. Thomas,* 49 F.3d 253, 260 (6th Cir.1995); *Landers,* 39 F.3d at 649; *United States v. Rasco,* 963 F.2d 132, 134

(6th Cir.), *cert. denied,* 506 U.S. 883, 113 S.Ct. 238, 121 L.Ed.2d 173 (1992).

▮ To determine whether the district judge's refusal to depart downward was an exercise of discretion or a legal determination that there was no authority to depart, the court of appeals reviews the sentencing hearing transcript. *See Dellinger,* 986 F.2d at 1044. In this case, Ebolum's counsel advised the district judge of a decision of the United States Court of Appeals for the District of Columbia Circuit, *United States v. Smith,* 27 F.3d 649 (D.C.Cir.1994), that permitted a defendant's status as a deportable alien to be considered as a basis for a downward departure. The district judge repeatedly stated that he did not agree with the *Smith* decision, that he was "bound by the guideline and there's no ground for departure," and that the defendant should address the issue of the availability of downward departures based on deportable alien status to the court of appeals. The district judge also asked Ebolum's attorney how he could argue that the United States Sentencing Commission (the "Sentencing Commission") had not taken deportable alien status into consideration when formulating the guideline that applies to the crime of unlawful entry into the United States. These comments indicate that the district court disagreed with the D.C. Circuit that a downward departure based on alien status was permissible, and that he believed that such a departure was legally precluded. The district judge's comments that he "had no discretion" and that he "was bound by the guideline" also indicate that he believed he lacked authority to depart. Thus, the district court's refusal to depart downward is reviewable in this court.

## III.

Congress has provided that courts may depart from the sentencing ranges set out in the Guidelines when:

> ... there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating

the guidelines that should result in a sentence different from that described ... 18 U.S.C. § 3553(b).

■ Ebolum argues that he should have received consideration for a downward departure based on his status as a deportable alien because deportable aliens are ineligible for certain prison programs, such as halfway house or home incarceration treatment and minimum security prisons. *See* Federal Bureau of Prisons, Program Statement 5100.05, Security Designation and Custody Classification Manual (June 16, 1994) (a deportable alien, which the Bureau of Prisons defines as "an inmate who is a citizen of a foreign country," cannot be housed in a minimum security facility or a community corrections center). Ebolum asserts that his ineligibility for such programs makes his sentence more harsh than the sentences imposed upon other inmates, thus entitling him to consideration for a downward departure.

Ebolum relies on the D.C. Circuit's decision in *United States v. Smith*, 27 F.3d 649 (D.C.Cir.1994). In *Smith*, the court held that a downward departure "may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence...." *Id.* at 655. The *Smith* majority reasoned that the "aggravating or mitigating circumstances" that permit departure may be "characteristics of the offenders as well as of the crime." *Id.* at 651. The court then decided that a defendant's status as a deportable alien could be a grounds for departure, albeit in "highly infrequent" situations, and remanded to the district court to determine whether such a departure was warranted in that case. *Id.* at 655–56 (quoting U.S.S.G., Ch. 1, Pt. A, § 4(b)).

Ebolum's case, however, involves a significantly different situation than that presented in *Smith*. The defendant in *Smith* was sentenced under U.S.S.G. § 2D1.1 for violations of 21 U.S.C. § 841, possession of cocaine base with intent to distribute. *Smith*, 27 F.3d at 650. The guideline at issue in *Smith* is applicable to *all* defendants, not just aliens, who are convicted of illegally manufacturing, importing, exporting, or distributing drugs, or of possession of drugs with intent to commit those offenses. U.S.S.G. § 2D1.1. In contrast, Ebolum was sentenced under U.S.S.G. § 2L1.2 for a violation of 8 U.S.C. § 1326, illegal reentry by a deported alien. The crime of which Ebolum was found guilty can be committed only by deportable aliens. Section 2L1.2 was formulated to provide guideline ranges for Ebolum's crime and three other crimes, including:

8 U.S.C. § 1185(a)(1), which prohibits aliens from departing from or entering the United States except in accordance with the rules, regulations, and orders prescribed by the President;

8 U.S.C. § 1252(e), which prohibits an alien's willful failure to leave the United States after a final order of deportation has been entered; and

8 U.S.C. § 1325(a), which prohibits aliens from entering the United States at any time or place other than one designated by immigration officers, eluding examination or inspection upon entry, and making willfully false or misleading representations or concealing material facts.

U.S.S.G.App.A. All of these crimes may be committed only by aliens, and most, if not all, of those aliens are deportable. *See* 8 U.S.C. § 1251(a)(1)(B) (an alien is deportable if, inter alia, the alien is in the United States in violation of the immigration laws).

Absent any credible argument or evidence to the contrary, we must assume that the Sentencing Commission took deportable alien status into account when formulating a guideline that applies almost invariably to crimes, such as 8 U.S.C. § 1326, that may be committed only by aliens whose conduct makes them deportable. Therefore, the district court's determination that it could not depart downward on the basis of deportable alien status in this case was correct.

We do not decide today that deportable alien status may never be a basis for downward departure in sentencing for other types of crimes. We simply hold that deportable alien status may not be a basis for downward departure from a sentence imposed under a guideline that applies primarily to aliens who are deportable, because the Sentencing Com-

mission must have taken such status into account when formulating that guideline.

## IV.

 Ebolum also argues in a pro se brief that the district court should have applied the 1988 Guidelines instead of the 1994 Guidelines when calculating his sentence. Ebolum argues that the indictment to which he pleaded guilty referenced only the crime of "entering" the United States, which occurred in 1989, and not the crime of being "found in" the United States, which occurred in 1994. Section 1326 is violated by any alien who has been deported and who thereafter "enters, attempts to enter, or is at any time found in, the United States ..." without the Attorney General's permission. Ebolum thus argues that he pleaded guilty only to entering the United States, which occurred in September 1989, and that the 1988 Guidelines should apply. Ebolum relies on the cover sheet of the indictment against him, which states:

> INDICTMENT: T. 8 U.S.C. Section 1326—Entering United States without express consent of the Attorney General of the United States—1 count

However, the body of the indictment states that "on or about July 14, 1994 ... [Ebolum] did enter and was found in the United States without the express consent of the Attorney General...." The indictment was read to Ebolum during the arraignment at which he pleaded guilty. Moreover, the body of the indictment contains the actual charge, and the caption or cover sheet is not a necessary or controlling part of the indictment. *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir.1992), *cert. denied*, 507 U.S. 1041, 113 S.Ct. 1874, 123 L.Ed.2d 493 (1993). Because Ebolum actually pleaded guilty to being found in the United States in 1994, the 1988 Guidelines do not apply. Ebolum was sentenced in January 1995, while the 1994 Guidelines were still in effect, so the district court correctly applied the 1994 Guidelines. *See United States v. Nagi*, 947 F.2d 211, 213 n. 1 (6th Cir.1991), *cert. denied*, 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992) (district court generally applies guidelines in effect at sentencing, unless guidelines in effect when crime committed are more favorable to the defendant).

The district court properly declined to depart from the applicable guideline range based on Ebolum's status as a deportable alien, and applied the correct version of the Guidelines. Therefore, we **AFFIRM** Ebolum's sentence.