107 F.3d 872
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Brenda L. MULLINS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Shirley Keith MULLINS, Defendant-Appellant.
 Nos. 95-6554, 95-6555.
 United States Court of Appeals, Sixth Circuit.
 Feb. 12, 1997.
 
 Before: NELSON and DAUGHTREY, Circuit Judges; COHN, District Judge.*
 COHN, District Judge.
 This is a sentencing appeal. Defendants-appellants Brenda L. Mullins and Shirley Keith Mullins (Keith Mullins) pled guilty to Mail Fraud, 18 U.S.C. § 1341. The fraud arose from a "scam" to defraud medical insurance companies by faking accidents. Brenda Mullins was sentenced to twelve months imprisonment, and Keith Mullins was sentenced to fifteen months imprisonment.
 The Mullinses argue on appeal that the sentencing court erred by dismissing their respective motions for downward departure. The Mullinses also appeal the sentencing court's denial of the government's motion to reduce their sentences under Fed.R.Crim.P. 35(b). The Mullinses particularly argue that the sentencing court failed to provide reasons for its decisions. In response, the government first argues that we have no jurisdiction over this appeal, and second, it asserts that if we do have jurisdiction, the sentencing court did not abuse its discretion because it adhered to a particular sentencing philosophy in determining all sentences. The parties waived oral argument on the appeal.
 For the reasons that follow, we lack jurisdiction to review the sentencing court's refusal to depart downward based on the Mullinses' motions, and we vacate the sentencing court's decision with respect to the government's Rule 35(b) motions. We remand for further action by the sentencing court.
 I.
 Brenda and Keith Mullins are a married couple with two minor children. The Mullinses and approximately forty other individuals were involved in a multimillion-dollar insurance scam network through which they staged accidents or feigned injury to obtain medical insurance payments. The Mullinses each participated in three to four staged incidents or claims.
 The government made plea offers to the scam participants. Under the plea offers, if a participant pled to a single count of mail fraud, the penalties would be limited to the dollar amount of loss attributable to the participant's known false claims, and not to the entire amount of the conspiracy. Thus the Mullinses each pled guilty to a single count of mail fraud, 18 U.S.C. § 1341.
 The Mullinses also agreed to cooperate with the government, for example by testifying against major organizers of the scam. In exchange, the government agreed to "make known to the Court, prior to or at the time of sentencing, the total extent of the [Mullinses'] cooperation with the government or lack thereof." If the Mullinses effectively cooperated with the government, the government promised to file motions for a downward departure based on substantial assistance under United States Sentencing Guidelines Manual § 5K1.1, p.s. (1993).
 No such motions were filed. There is no explanation in the record for the government's decision not to file these motions prior to sentencing.
 A.
 Prior to sentencing, Brenda Mullins filed a motion for downward departure based on matters outside of the plea agreement. She asserted that she deserved a reduced sentence because, inter alia, she is the mother of two minor children, one of whom has Lupus disease; she voluntarily withdrew from criminal activity four years prior to arrest; she has "exemplary citizenship"; and she participated in the crime solely to provide for her family. Keith Mullins also filed a motion for downward departure, arguing that he deserved clemency because he is disabled, as he has 44% permanent disability in one hand which constitutes a 26% disability of the total body; because has an excellent employment history; and because as the sole breadwinner, he must provide for his family.
 At the sentencing hearing, the sentencing court considered the Mullinses' motions for downward departure. The government opposed the motions at the hearing, arguing that the grounds were either already addressed or expressly excluded as proper grounds for departure in the Sentencing Guidelines. The sentencing court agreed that the Sentencing Guidelines had already taken account of all claimed mitigating circumstances and factors, and rejected the Mullinses' motions.
 The sentencing court said specifically that all motions for downward departure were "either built into the guidelines or else the guidelines specifically say it shall not be considered." The sentencing court opined that a preferable solution to the Mullinses' family situation would be to stagger their terms of incarceration, stating:
 I am not unsympathetic to family considerations, but with the age of these children, 17 and 8, it's, frankly, clear to me that your clients knew they had children before they got into this.
 The sentencing court also recommended that Keith Mullins participate in an alcohol rehabilitation program.
 The sentencing court then applied the sentencing guideline for mail fraud, which has a base offense level of 6. U.S.S.G. § 2F1.1. Because the amount of loss attributed to Brenda Mullins was between $120,000 and $200,000, her offense level was increased by 7. U.S.S.G. § 2F1.1(b)(1)(H). Further, because Brenda Mullins's scheme to defraud involved more than one victim, her base offense level was increased by an additional 2 levels. U.S.S.G. § 2F1.1(b)(2). Her offense level with additions was 15, but the sentencing court deducted 2 levels because Brenda Mullins accepted responsibility. U.S.S.G. § 3E1.1(a). The final computation of her offense level was 13. Because Brenda Mullins was a first-time offender, her criminal history category was "I," and the sentencing range for her offense was 12 to 18 months. She was sentenced to twelve months imprisonment and three years supervised release, and ordered to pay restitution of $128,736.84.
 As for Keith Mullins, his base offense level of 6 was increased to level 14 because the amount of loss he caused ranged from $70,000 to $120,000 (6 levels) and because his scheme to defraud involved more than one victim (2 levels). U.S.S.G. §§ 2F1.1(b)(1)(G) & (b)(2). The sentencing court also deducted 2 levels because he accepted responsibility, which resulted in a final offense level of 12. U.S.S.G. § 3E1.1(a). He had a criminal history category of "II" because of prior alcohol-related offenses, and his sentencing range was 12 to 18 months. He was sentenced to fifteen months imprisonment, three years supervised release, and restitution in the amount of $85,886.
 The sentencing court ordered that the Mullinses serve staggered terms and delayed their reporting dates. The sentencing court also noted that the government could file future motions as to the Mullinses' substantial assistance, stating that the Mullinses could make further motions:
 [A]fter the dust settles with regard to all of this and the government decides exactly where it's going, if it makes any 5 K [i.e., U.S.S.G. § 5K1.1] motions and where it's going to make those 5 K motions....
 Following sentencing, the Mullinses continued on bond.
 B.
 As noted above, the government did not file motions for downward departure prior to the Mullinses' sentencing. However, the government indicated at the Mullinses' sentencing hearing that one or both of them "may be the recipient of a motion in the future from the United States" regarding their substantial assistance. The government subsequently filed motions to reduce the Mullinses' sentences under Fed.R.Crim.P. 35(b), which is a mechanism for reducing an offender's sentence if the offender has substantially assisted the government after sentencing. In their motions, the government briefly stated that the Mullinses had effectively cooperated with the government, asserting that both had "provided substantial assistance to the United States in the investigation and prosecution of others."
 The sentencing court then held a consolidated hearing on the government's Rule 35(b) motions, made on behalf of ten or more scam participants, in order to determine which of the participants had most aided the government. At the hearing, the sentencing court noted that "perhaps these motions to reduce had in effect already been granted when I accepted the plea agreements." The sentencing court explained:
 I should say that it is clear to me that everyone here is to be commended for the part that they have played in assisting here. It's clear that everyone has assisted the government to some degree, at some level. Notwithstanding that, I would note that it also appears to me that most of the people here today have already received a significant break, in some cases a substantial break. It appears to me that there should be some hierarchy imposed. It will be based on the individual facts.
 There are some different levels involved. I know that there are several people who refer to things like being manipulated and their unfortunate circumstances and the degree of their involvement here. Some of that to a certain extent has already been taken into account in your plea agreement. I am going to just have to ferret out where it has not been reflected.
 The sentencing court questioned the government on several matters, notably asking which participants "broke the case open," how the government calculated the amounts of restitution, and what the government knew of each offender's conduct at the time of the plea agreement.
 On the subject of the Mullinses' cooperation, the government stated:
 Brenda and Keith Mullins have been cooperative from day one, after I finally got ahold of them. I had a hard time catching them at home.... Keith probably did more free lancing than, than Brenda. I believe Keith came in later....
 But any time we needed them, and there were a lot of times because they made several trips, there was information we needed to clarify, I never called on them a time that they didn't meet me at the appointed hour. And they would many times save me a trip down here and come to my office in Lexington and meet. And whatever information they had, they always provided it to me.
 In orders issued after the hearing, the sentencing court denied the government's motions to reduce with respect to the Mullinses.
 II.
 The Mullinses first appeal the sentencing court's refusal to depart downward. As an initial matter, the government argues that we do not have jurisdiction to hear an appeal from this decision.
 A sentencing court's decision not to depart downward is generally unreviewable. United States v. Ebolum, 72 F.3d 35, 37 (6th Cir.1995). "An appeal may be taken, however, when the district court believed that it lacked any authority to depart downward as a matter of law." Id. In order to determine whether the sentencing court's refusal to depart downward was an exercise of discretion or a legal judgment that it lacked authority, we must review the sentencing hearing transcript. Id.
 At the sentencing hearing of Brenda and Keith Mullins, the court listened at length to the Mullinses' grounds for downward departure. The government argued that these grounds were not "well taken in terms of basis for downward departure." The sentencing court agreed and denied the Mullinses' motions, finding:
 everything you have mentioned is either built into the guidelines or else the guidelines specifically say it shall not be considered. And I think that's enough said without getting any more specific.
 The sentencing court exercised its discretion in refusing to depart downward. It took note of the Mullinses' family situation, and favored the solution of staggering the terms of incarceration. Because the sentencing court's refusal was an act of discretion and not a legal determination that it lacked power to depart, we lack jurisdiction to review the failure to depart on these grounds.
 III.
 The Mullinses also argue that the sentencing court abused its discretion when it refused to grant the government's motions to reduce the Mullinses' sentences, made pursuant to Fed.R.Crim.P. 35(b). The Mullinses assert that the sentencing court erred because it used a "mechanistic" approach instead of focusing on such factors as usefulness, truthfulness, and extent of cooperation.
 A.
 Under Fed.R.Crim.P. 35(b), "[t]he court, on motion of the Government ... may reduce a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense, in accordance with the guidelines and policy statements issued by the Sentencing Commission." Although the government agreed in the Mullinses' Rule 11 plea agreements to make motions for downward departure for substantial assistance prior to sentencing under U.S.S.G. § 5K1.1, the government waited and acted under Rule 35(b).
 Rule 35(b) is a re-sentencing provision, and Rule 35(b) motions are therefore temporally distinct from U.S.S.G. § 5K1.1 motions, which are sentencing tools. United States v. Bureau, 52 F.3d 584, 594 (6th Cir.1995); United States v. Gangi, 45 F.3d 28, 30 (2d Cir.1995). Nevertheless, the government makes these motions under identical criteria. The United States Attorney's Manual states:
 Every United States Attorney or Department of Justice Section Chief or Office Director shall maintain documentation of the facts behind and justification for each substantial assistance pleading [under § 5K1.1]....
 
 
 1
 The procedures described above shall also apply to Motions filed pursuant to Rule 35(b), Federal Rules of Criminal Procedure, where the sentence of a cooperating defendant is reduced after sentencing on motion of the United States. Such a filing is deemed for sentencing purposes to be the equivalent of a substantial assistance pleading.
 
 
 2
 United States Dep't of Justice, U.S. Attorney's Manual § 9-27.410 (1993).
 
 
 3
 Some of the United States Courts of Appeal are in conflict over which federal statute governs appealability of decisions on Rule 35(b) motions. See United States v. Doe, 93 F.3d 67, 68 (2d Cir.1996). The Second, Fourth, Ninth, and Eleventh Circuits have stated that 18 U.S.C. § 3742[1] governs appealability, often likening the review of Rule 35(b) motions to the review of pre-sentence government motions under U.S.S.G. § 5K1.1. Id.; United States v. Manella, 86 F.3d 201, 203 (11th Cir.1996); United States v. Pridgen, 64 F.3d 147, 149 (4th Cir.1995); United States v. Arishi, 54 F.3d 596, 599 (9th Cir.1995). The First Circuit, however, applies 28 U.S.C. § 1291[2] to the appealability of Rule 35(b) motions. United States v. McAndrews, 12 F.3d 273, 277 (1st Cir.1993).
 
 
 4
 Although we have likened Rule 35(b) to U.S.S.G. § 5K1.1, we decline at this time to determine which statute governs appealability of Rule 35(b) decisions. As will be discussed below, the sentencing court did not give reasons for its decision, and we cannot determine on the record before us whether the sentencing court's decision is reviewable. As in United States v. Bureau, in which we could not determine whether the sentencing court exercised discretion in consideration of a § 5K1.1 motion, we cannot here tell whether the sentencing court properly exercised its discretion under Rule 35(b). Bureau, 52 F.3d at 595.
 
 B.
 
 5
 That the government often enlists the aid of offenders in order to apprehend principal offenders is a practice of long standing. See Simon Greenleaf, Law of Evidence § 379 (12th ed. 1866) ("The admission of accomplices, as witnesses for the government, is justified by the necessity of the case, it being often impossible to bring the principal offenders to justice without them."). Offenders are frequently promised clemency in exchange for cooperation. Although the government's promise is not absolute, courts have historically upheld such promises and imposed more lenient sentences on cooperating offenders:
 
 
 6
 Whether the defendant by his bargain receives an equitable or absolute right to his freedom makes little practical difference. The courts uniformly hold the prosecutor to his promises and the practice seems to be favored because of judicial necessity.
 
 
 7
 Newman F. Baker, The Prosecutor--Initiation of Prosecution, 23 J.Crim.L. & Criminology 770, 789 (1933). Today, the Sentencing Guidelines preserve this tradition by allowing sentence reduction for substantial assistance to authorities:
 
 
 8
 A defendant's assistance to authorities in the investigation of criminal activities has been recognized in practice and by statute as a mitigating sentencing factor. The nature, extent, and significance of assistance can involve a broad spectrum of conduct that must be evaluated by the court on an individual basis. Latitude is, therefore, afforded the sentencing judge to reduce a sentence based upon variable relevant factors....
 
 
 9
 U.S.S.G. § 5K1.1, p.s., comment. (backg'd.); see also Williamson v. United States, 114 S.Ct. 2431, 2437 (1994) ("Small fish in a big conspiracy often get shorter sentences than people who are running the show, especially if the small fish are willing to help the authorities catch the big ones." (citations omitted)).
 
 
 10
 In the Mullinses' cases, however, the sentencing court did not respect the government's undertaking. The sentencing court made it clear at the hearing on the government's Rule 35(b) motions that it would establish a "hierarchy" for the scam participants. Although the sentencing court thanked all of *p-1X those who aided the government, it chose to distinguish between them based on degree of involvement in the crime and degree of aid to the government. When the sentencing court denied the Rule 35(b) motions with respect to the Mullinses, it did so without discussion and did not reveal the Mullinses' placement in the hierarchy.
 
 
 11
 The sentencing court was not compelled to accept the government's motion to reduce. However, it had an obligation to provide a basis on which to review its decision. Following sentencing, if circumstances are such as to warrant further action, the government can bring to the sentencing court's attention the fact of post-sentencing cooperation by an offender. This will enable the sentencing court to make a judgment on whether or not to reduce the offender's sentence to reflect the cooperation. The sentencing court is obliged to consider the motion, and its decision to reward or not to reward is an exercise of discretion. While the discretion is broad, it is not absolute and can always be reviewed for abuse. When the sentencing court fails to give reasons for declining to act on the government's request, it not only defeats the objectives of the policy, i.e. reward for cooperation, but it makes it impossible for a reviewing court to act one way or another on an appeal of the declination to act affirmatively.
 
 
 12
 To be sure, the government did not aid the sentencing court by elucidating the extent of the Mullinses' cooperation. Yet the government stated at the sentencing hearing that one or both of the Mullinses might in the future "be the recipient of a motion in the future from the United States," meaning that, contrary to the Mullinses' plea agreements, the government would make Rule 35(b) motions to reduce based on substantial assistance rendered after sentencing. At the Mullinses' sentencing hearing, the sentencing court seemed to confuse Rule 35(b) and § 5K1.1 motions, as it stated that it anticipated the government's future § 5K1.1 motions after having sentenced the Mullinses. As the Second Circuit has stated:
 
 
 13
 The only practical difference between Rule 35(b) and U.S.S.G. § 5K1.1 is a matter of timing: The latter is based on substantial assistance before sentencing while the former is based on substantial assistance after sentencing.
 
 
 14
 Gangi, 45 F.3d at 30.
 
 
 15
 We will vacate the sentencing court's decisions with respect to the government's Rule 35(b) motions.
 
 IV.
 
 16
 We VACATE the sentencing court's decisions with respect to Rule 35(b) motions and REMAND for decisions consistent with this opinion. We AFFIRM the Mullinses' sentences in all other respects.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Under 18 U.S.C. § 3742, a defendant may appeal a sentence if it is (1) imposed in violation of the law; (2) imposed as a result of the incorrect application of the sentencing guidelines; (3) an upward departure from the guidelines; or (4) imposed for an offense that has no applicable sentencing guideline and is plainly unreasonable
 
 
 [2]
 28 U.S.C. § 1291 permits appeal of all final decisions of district courts