**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Andrus THOMAS, Defendant–Appellant.**

No. 02–1942.

United States Court of Appeals, Sixth Circuit.

Aug. 24, 2004.

Rehearing Denied Sept. 20, 2004.

Kathleen Moro Nesi, Asst. U.S. Attorney, U.S. Attorney's Office, Detroit, MI, for Plaintiff–Appellee.

Andrus Thomas, Milan, MI, pro se.

James J. Hoare, Farmington Hills, MI, for Defendant–Appellant.

Before GIBBONS and COOK, Circuit Judges; and OLIVER, District Judge.[*]

OLIVER, District Judge.

On September 18, 2001, Defendant–Appellant Andrus Thomas was charged in a one count indictment as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). After a four-day trial, the jury found him guilty on March 28, 2002. On July 9, 2002, the district court sentenced him to 46 months' imprisonment plus a three-year term of supervised release. Thomas argues on appeal that the district court should have: (1) granted him a downward adjustment under United States Sentencing Guideline ("U.S.S.G.") 3E1.1 for acceptance of responsibility; (2) reduced his offence level pursuant to U.S.S.G. § 3B1.2 because he played a minor role in the offense; and (3) granted him a downward departure based on his minimal culpability and the circumstances surrounding his purchase of the gun. For the reasons stated hereafter, we affirm Thomas's sentence.

## I. FACTS AND PROCEDURAL HISTORY

At trial, the parties stipulated to two of the three elements of the offense, including that: (1) Thomas knew he had been convicted of a felony and that his conviction had not been expunged nor his rights restored, and (2) the firearm at issue affected interstate commerce. The only question at trial was whether Thomas knowingly possessed a firearm.

The evidence showed that Thomas and his wife purchased the rifle at issue in 1990. While Thomas accompanied his wife to the pawn shop, selected the rifle, and supplied the funds for the purchase, he had his wife make the actual purchase. According to his wife's testimony, he did so because he was a convicted felon.

On Super Bowl Sunday, January 2001, Thomas accused his wife ("Mrs.Thomas") of having an affair and began choking her. Mrs. Thomas called her Pastor, Rob Stancer, for assistance. Eventually, Pastor Stancer came to the house and drove Mrs. Thomas and her two children to a hotel. After Mrs. Thomas moved out, Pastor Stancer counseled Thomas to bring the rifle to the church or to sell it. Within a week, Mrs. Thomas returned home because Thomas had agreed to get rid of the rifle and go stay with a friend.

On February 14, 2001, Thomas pled guilty to a domestic violence charge stemming from the incident on Super Bowl Sunday. He then returned home, and two weeks later, Mrs. Thomas and her children

---

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

moved to an apartment. She testified that Thomas continued to telephone her and make verbal threats after she moved out.

In early March 2001, Thomas decided to turn the rifle over to Pastor Stancer so that he would be allowed to see his children. When he arrived at the church, he could not find Pastor Stancer, so he turned the gun over to Pastor Art Ledley and Pastor Miles Cook. Later, Mrs. Thomas sold the rifle to Pastor Cook for $75 without Thomas's knowledge. Thereafter, Thomas approached Pastor Cook and demanded that Cook give him the gun. Pastor Cook responded that he had purchased the gun from Mrs. Thomas, and that if Mrs. Thomas wanted the gun back, he would give it back to her.

A couple of days later, Mrs. Thomas asked Pastor Cook for the gun. He gave it to her when she returned the $75 he had previously paid. According to Mrs. Thomas's testimony, she succumbed to Thomas's demands that she buy the gun back. She testified that when she returned to Thomas's house with the gun, Thomas took it from the back seat of her car.

After another physical altercation with Thomas and after receiving numerous threatening telephone calls from him, Mrs. Thomas made several complaints to the Inkster, Michigan Police Department. The police department eventually told a contact at the Bureau of Alcohol, Tobacco, and Firearms about the case, who expressed an interest in obtaining the gun. Mrs. Thomas gave Thomas's address to the ATF agents, told them his work schedule, drew a diagram of the house, and told them where she believed the gun would be.

On August 2, 2001, the agents executed a search warrant at Thomas's residence to search for the firearm. When the officers approached Thomas, they asked if there was anything in the house that should concern them. Thomas responded that he had a firearm in the basement and that it was unloaded. One of the officers testified that upon searching the house, it appeared that Thomas lived there alone. After finding the rifle where Thomas stated it would be, they arrested him.

In Thomas's sentencing memorandum, he included both objections to the presentence report and a request for downward departure. With respect to the presentence report, Thomas disputed the computation of his criminal history score, given the age of his predicate felony, a murder conviction in 1984. With respect to his request for downward departure, Thomas asked the district court to reduce his sentence on the basis that the recommended punishment was too harsh. According to Thomas's memorandum, he was entitled to a reduction because his culpability was minimal and the record did not show that he ever brandished the gun. He also asked the court to credit him with a two-level downward adjustment based on his acceptance of responsibility because he admitted to the ATF agents that he had a gun in his basement.

The probation officer treated Thomas's arguments about his acceptance of responsibility and his culpability as a request for downward adjustment for acceptance of responsibility and a downward adjustment for minimal role in the offense. The officer recommended that the court reject both of these requests. At sentencing, the court adopted the recommendations. He concluded that Thomas was not entitled to an adjustment for acceptance of responsibility because he had portrayed himself as a victim, not a perpetrator of the offense, and had essentially claimed that the only reason he was in court was because of his ex-wife. He also concluded that Thomas's conduct did not qualify him for a reduction for a minimal role in the offense because he was found guilty of being a felon in possession by a jury. The court was unpersuaded by Thomas's argument that he

never discharged the weapon because this was not an element of the offense charged. Thereafter, when asked whether he had anything further to add before the court imposed sentence upon Thomas, Thomas's counsel asked the court to depart from the guideline range for the same reasons raised in the sentencing memorandum in support of his request for adjustments to his base offense level. The court did not grant a downward departure.

## II.  ANALYSIS

### A.

Under USSG § 3E1.1, a defendant may be granted a two-level reduction in offense level if he "clearly demonstrates acceptance of responsibility for his offense." The defendant bears the burden of proving acceptance of responsibility by a preponderance of the evidence. *See United States v. Maliszewski,* 161 F.3d 992, 1023–24 (6th Cir.1998). Because the sentencing judge " 'is in a unique position to evaluate a defendant's acceptance of responsibility, the determination of the sentencing judge is entitled to great deference.' " *U.S. V. Khalil,* 279 F.3d 358, 371 (6th Cir.2002) (quoting U.S.S.G. § 31.1, comment, note 5). A district court's factual determination of whether a defendant has accepted responsibility is therefore reviewed for clear error. *United States v. Bonds,* 48 F.3d 184, 187 (6th Cir.1995).

A sentencing court's finding that a defendant has failed to make the requisite demonstration of acceptance is not clearly erroneous if it finds that the defendant has demonstrated only a "very limited acceptance" of responsibility. *Id.* at 189. Furthermore, while it may be true that "[i]n certain circumstances a defendant may clearly demonstrate an acceptance of responsibility even though he exercises his right to trial, ... acceptance of responsibility under such circumstances are rare." *Khalil,* 279 F.3d at 371 (citations omitted). *See also United States v. Wallace,* 16 F.3d 1223, 1994 WL 43460, at *1 (6th Cir. Feb.14, 1994) (*per curiam* ) (finding district court did not clearly err in denying defendant's request for acceptance of responsibility adjustment because "acceptance of responsibility has to be an acceptance without excuses").

■ Here, the district court's determination that Thomas was not entitled to a downward adjustment under § 3E1.1 was not clearly erroneous. While Thomas acknowledged that he had a gun in his house when asked by the ATF agents, he attempted to blame his violation on his wife throughout the entire trial process and even during sentencing. He claimed that the gun belonged to his wife, that he did not have possession of the gun, that it was merely present in his house, and that his wife only told the police about the gun because of their domestic disputes. The district court did not err in concluding that, by portraying himself as the victim and blaming his violation on his wife, Thomas had not clearly accepted responsibility for his crime.

### B.

U.S.S.G. § 3B1.2 allows for a two-level reduction when a defendant is "a minor participant" in the offense. U.S.S.G. § 3B1.2.[1] Where a defendant is "less culpa-

---

1. Thomas did not clarify in his Sentencing Memorandum whether he sought a reduction for being a "minimal participant" pursuant to U.S.S.G. § 3B1.2(a) or "minor participant," pursuant to U.S.S.G. § 3B1.2(b). The Guidelines provide a four-level reduction for being a minimal participant and two levels for being a minor participant. In his sentencing memorandum, he sought only a two-level reduction. In his brief, Appellant argues that he was seeking a reduction for a minor role in the offense, yet cites U.S.S.G. § 3B1.2(a) regarding being a minimal participant. While the court concludes that he was seeking adjustment for a minor role in the offense, this

ble than most other participants, but whose role could not be described as minimal," he may be entitled to a reduction as a "minor" participant. U.S.S.G. § 3B1.2, comment, note 5. In order to be eligible for a reduction under § 3B1.2, more than one participant must be involved in the offense, and no reduction is warranted unless the defendant is substantially less culpable than the average participant. *Id.,* comment, note 2. *See also United States v. Kenney,* 52 Fed.Appx. 799, 800 (6th Cir. 2002). A defendant bears the burden of proving his mitigating role by a preponderance of the evidence, *see Kenney,* 52 Fed.Appx. at 800, and a district court's denial of a mitigating role adjustment to a defendant's offense level is reviewed for clear error. *See United States v. Owusu,* 199 F.3d 329, 337 (6th Cir.2000).

Thomas argued to the district court that he was entitled to a minor role adjustment because he had the gun removed from the house; it was located in his basement at the time of his arrest; and he did not brandish or use it. The district court rejected this argument, concluding that because Thomas was convicted of the offense of felon in possession, he was not entitled to an adjustment.

■ As a matter of law, Thomas was not entitled to a minimal role adjustment because there were not multiple participants in the offense at issue. Rather, he was the only participant in the charged offense, felon in possession of a firearm. Consequently, § 3B1.2 does not apply to him.

### C.

Lastly, Thomas contends that the district court should have granted him a downward departure because there was minimal evidence produced at trial to support his culpability, *i.e.,* that he had possession of the gun.

A district court's refusal to exercise its discretion to grant a downward departure generally is not subject to review on appeal. *United States v. Byrd,* 53 F.3d 144, 145 (6th Cir.1995). We may review a district court's denial of a downward departure only where the district court incorrectly believed that it lacked discretion to depart downward. *See United States v. Coleman,* 188 F.3d 354, 357 (6th Cir.1999) (*en banc*). This court reviews *de novo* whether the district court was aware of its authority to make a downward departure. *See United States v. Ebolum,* 72 F.3d 35, 37 (6th Cir.1995). In order to determine whether a district court's refusal to depart downward was an exercise of the court's discretion or based on the legal conclusion that it lacked the authority to do so, we must review the sentencing transcript. *Id.* Finally, "there is no duty on the trial judge to state affirmatively that he knows he possesses the power to make a downward departure, but declines to do so;" rather, the district court is presumed to have properly exercised its discretion when it decides that a departure is not warranted. *U.S. v. Ridge,* 329 F.3d 535, 544 (6th Cir. 2003) (quoting *Byrd,* 53 F.3d at 145).

■ Thomas has pointed to nothing in the sentencing transcript to overcome the presumption that the sentencing court properly exercised its discretion in refusing to grant a downward departure. After rejecting Thomas's objections to the probation officer's recommendations that Thomas be denied reductions for acceptance of responsibility and a minimal role in the offense, the court asked Thomas's counsel whether he wished to address any further matters before sentence was imposed. Thomas's counsel then asked that

conclusion has no bearing on the outcome of   the issues on appeal.

Thomas be granted a downward departure for the same reasons he offered in support of Thomas's request for downward adjustments:

> Your Honor, the memorandum was broken down into to [sic] two portions. There is an item referred to as a Defendant's Sentencing Memorandum, which is allocution in writing on behalf of the defendant to downwardly depart from the guideline sentence.
>
> Other than to, again, indicate the items that I've already identified, the guideline scorings are where they are.
>
> But clearly, this is not the standard case where the Court has a felon in possession.
>
> We're asking the Court to depart from the guidelines for the reasons stated.

(JA 245). The court did not thereafter specifically address Thomas's request for a departure, but the request was effectively denied when the court sentenced Thomas within the guideline range. Because the district court had already found that the facts Thomas offered in support of his downward departure request did not constitute acceptance of responsibility, it can be inferred from the record that the court was also denying a motion for a downward departure on these grounds. Moreover, as there is nothing to suggest that the court incorrectly believed that it lacked the authority to depart downward, the court's refusal to do so is not reviewable.

## III. THOMAS'S *PRO SE* BRIEF

In his *pro se* brief, Thomas raises two arguments that were not addressed by either his counsel or the government. However, neither have merit.

First, Thomas argues that his conviction is invalid because his rights were restored under Michigan law and that he is therefore allowed to legally possess a firearm. A previous conviction cannot serve as a predicate felony for purposes of 18 U.S.C. § 922(g)(1) if a defendant has had his civil rights restored as to the conviction. *See* 18 U.S.C. §§ 921(a)(20)(B), 922(g)(1). At trial, however, Thomas stipulated to the fact that he had not had his civil rights restored as to his 1984 murder conviction.

Second, Thomas contends that he was denied a fair trial when his wife testified against him in violation of the confidential marital communications privilege. According to Thomas, Mrs. Thomas should not have been allowed to testify about Thomas's verbal and physical abuse of her or about letters that she wrote to Thomas asking him to leave her alone. In order to invoke the confidential marital communications privilege, three prerequisites must be met: (1) at the time of the communication, there must have been a marriage recognized as valid by state law; (2) the communications at issue must be "utterances or expressions intended by one spouse to convey a message to the other;" and (3) the communications must be made in confidence. *United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir.1993). The privilege may be asserted by either spouse. *Id.* Thomas has not shown that he sought to invoke this privilege during the trial. Moreover, any testimony about Thomas's physical abuse would not qualify for protection because such abuse was not an utterance or expression. Finally, Thomas has not demonstrated that any of the communications at issue were made in confidence; thus, the privilege does not apply.

## IV. CONCLUSION

For the reasons stated herein, we affirm the sentence of Defendant Andrus Thomas.