UNITED STATES of America,
Plaintiff–Appellee,

v.

Victor COPADO–JARAMILLO,
Defendant–Appellant.

No. 03–5127.

United States Court of Appeals,
Sixth Circuit.

Aug. 31, 2004.

Linda Harris, Asst. U.S. Attorney, U.S. Attorney's Office, Memphis, TN, for Plaintiff–Appellee.

J. Patten Brown, III, Asst. F.P. Defender, Office of the Federal Public Defender, Memphis, TN, for Defendant–Appellant.

Before: KEITH and CLAY, Circuit Judges; and O'MEARA, District Judge.*

CLAY, Circuit Judge.

Defendant appeals his conviction for illegal reentry into this country after being deported by the government, in violation of 8 U.S.C. § 1362(a). In this appeal, Defendant argues the district court erred in ruling that Defendant's commission of an aggravated felony under 8 U.S.C. § 1362(b)(2) is not an element of the illegal reentry offense for which Defendant was charged. Additionally, Defendant contends that the district court committed error in holding that it had no authority to grant his motion for a downward departure pursuant to the Sentencing Guidelines. For the reasons set forth below, we **AFFIRM** the district court's judgment.

## BACKGROUND

### Procedural History

On April 18, 2002, a federal grand jury indicted Defendant for unlawfully reentering this country after being deported for committing an aggravated felony, in violation of 8 U.S.C. § 1362(a)(2) and (b)(2).

---

* The Honorable John Corbett O'Meara, United States District Judge for the Eastern District of Michigan, sitting by designation.

Defendant then entered a plea of not guilty on April 26, 2002. On July 30, 2002, Defendant changed his plea to guilty as charged in the indictment. On September 24, 2002, the government filed its position regarding sentencing factors. On October 30, 2002, Defendant then filed his position regarding sentencing factors and a motion for a downward departure pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Exactly a week later, the government filed its response to Defendant's arguments concerning the sentencing factors and motion for downward departure. Subsequently, the district court sentenced Defendant to forty-six months of imprisonment, followed by two years of supervised release, based on his guilty plea. On January 15, 2003, Defendant filed a notice of appeal with the district court.

### Facts

The facts are taken from the record before the district court. On March 31, 2002, a state trooper with the Tennessee Highway Patrol clocked Defendant's vehicle traveling above the posted speed limit. After the state trooper stopped Defendant, a check of his driver's license revealed that he was previously deported from the United States and had illegally reentered the country. The INS was contacted and an investigation revealed that Defendant had been previously deported after serving a sentence for smuggling aliens. Defendant plead guilty to illegally reentering the country, but objected to the sixteen-level enhancement of his sentence pursuant to § 2L1.2(b)(1)(A) of the Sentencing Guidelines. Before the district court, Defendant argued that the enhancement was improper because the maximum penalty for reentering the country illegally, pursuant to 8 U.S.C. § 1326(a), is 2 years. Defendant admits that, pursuant to 8 U.S.C. § 1326(b)(2), the maximum penalty for a prior aggravated felony is twenty years imprisonment. He argued, however, for a discretionary departure from the guideline provisions because he is a foreigner and would not be entitled to the community confinement program during the last six months of his imprisonment pursuant to 18 U.S.C. § 3624(c). Thus, Defendant urged the district court that a fair sentence would be thirteen months in prison followed by the "maximum term of supervised release." (Defendant's Br. at 6). Defendant also urged the district court to depart from the guideline sentence because of his foreign status, but the district court advised Defendant that it was "not in the foreign policy business" and was "bound by the Guidelines." (J.A. at 46). After Defendant was sentenced on the low end of the guideline range, this appeal ensued.

### DISCUSSION

Defendant first challenges the enhancement of his sentence. A defendant's constitutional challenge to his or her sentence is a question of law requiring *de novo* review. *United States v. Jackson*, 181 F.3d 740, 743 (6th Cir.1999); *United States v. Smith*, 73 F.3d 1414, 1417 (6th Cir.1996).

Defendant argues that 8 U.S.C. § 1326(b)(2) is a distinct offense from 8 U.S.C. § 1326(a), and, therefore, the district court erred in concluding that Defendant was properly subject to a sentence enhancement under the former statutory section because he violated the latter statutory section. The statutory provisions in dispute provide:

**(a) In general**

Subject to subsection (b) of this section, any alien who—

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order

of exclusion, deportation, or removal is outstanding and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to this reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under Title 18, or *imprisoned not more than 2 years,* or both.

**(b) Criminal penalties for reentry of certain removed aliens**

Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection....

(2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, *imprisoned not more than 20 years,* or both

8 U.S.C. §§ 1326(a), (b)(2) (emphasis added). In *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), the Supreme Court held that 8 U.S.C. § 1326(b)(2) does not announce a distinct offense from 8 U.S.C. § 1326(a). *Id.* at 241. Instead, the former subsection "involves a sentencing factor—the prior commission of an aggravated felony—that is neither 'presumed' to be present, nor need to be 'proved' to be present, in order to prove the commission of the relevant crime [under the latter subsection]." *Id.* Subsequent to *Almendarez–Torres,* the Court decided the seminal case of *Apprendi,* preserving a defendant's constitutional right to have a jury find every fact that increases a defendant's sentence beyond the statutory maximum. *Apprendi,* 530 U.S. at 481. *Apprendi* expressly preserved the rule in *Almendarez–Torres,* reasoning that the latter case is "at best an exceptional departure from this rule." *Id.* at 473. More recently, this Court applied *Almendarez–Torres* and *Apprendi* and concluded that the former case represented the law in this circuit regarding whether a prior conviction was a sentencing factor in a federal three strikes statute or a separate crime under the same. *See United States v. Gatewood,* 230 F.3d 186, 192 (6th Cir.2000) (*en banc*).

In the instant case, Defendant recognizes that "Sixth Circuit law is against him," but contends that the case should be "remanded for re-sentencing without the enhanced penalty." (Defendant's Br. at 13). Defendant does not contest that he was convicted of illegally transporting aliens, an aggravated felony under 8 U.S.C. § 1324. Nor does Defendant dispute that he illegally reentered the country after being deported, in violation of 8 U.S.C. § 1326(a). Defendant's sole argument on appeal is that Justice Thomas's concurrence in *Apprendi* suggests that the slim majority in *Almendarez–Torres* would be no more if the case were decided today. Justice Thomas's concurring opinion in *Apprendi* indicated that his agreement with the *Almendarez–Torres* majority was error. *See Apprendi,* 530 U.S. at 520 (Thomas, J., concurring) ("[O]ne of the chief errors of *Almendarez–Torres*—an error to which I succumbed—was to attempt to discern whether a particular fact is traditionally (or typically) a basis for a sentencing court to increase an offender's sentence."). This Court in *Gatewood* recognized the potential weakness of *Almendarez–Torres* in light of *Apprendi,* but concluded that the former case "remains the law" on whether a prior conviction referenced in a statute serves as a separate offense or a sentencing factor. *Gatewood,*

230 F.3d at 192. The specific holding of *Apprendi* does support the *Gatewood* court's conclusion, however. *See Apprendi*, 530 U.S. at 490 ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added).

We believe *Almendarez–Torres* controls the outcome of this issue. Defendant violated 8 U.S.C. § 1326(a)(2) by reentering this country after being deported for committing the aggravated felony of trafficking in illegal aliens, in violation of 8 U.S.C. § 1324. Defendant's sentence was appropriately enhanced under 8 U.S.C. § 1326(b)(2) because he committed an "aggravated felony" by trafficking illegal aliens and subsequently illegally reentering this country, in violation of 8 U.S.C. § 1326(a). Because the government appropriately charged Defendant in the indictment with violation of 8 U.S.C. §§ 1326(a)(2) and (b)(2), and the latter plead guilty to violation of the statutes, Defendant's sentence of forty-six months imprisonment was within the permissible range under § 2L1.2 of the Sentencing Guidelines.[1]

Defendant's final contention is that the district court erred in determining that it had no authority to make a downward departure. A district court's determination that it lacked authority to depart downward under the federal sentencing guidelines is a question of legal interpretation reviewed *de novo*. *United States v. Hawkins*, 274 F.3d 420, 426 (6th Cir.2001); *Jackson*, 181 F.3d at 743. *But cf. United States v. Galvan–Perez*, 291 F.3d 401, 404 (6th Cir.2002) ("We review a district court's [actual] downward departure at sentencing for an abuse of discretion."); *United States v. Reed*, 264 F.3d 640, 646 (6th Cir.2001). Generally, a district court's discretionary decision not to depart from the guidelines is not reviewable on appeal. *United States v. Burke*, 237 F.3d 741, 743 (6th Cir.2001). A district court's determination that it lacked authority to depart from the sentencing guidelines, however, is an appealable issue. *See id; see also United States v. Ebolum*, 72 F.3d 35, 37 (6th Cir.1995).

On this final issue, Defendant recognizes that this Court's holding in *Ebolum* prevents a downward departure on the basis of Defendant's deportable alien status, but Defendant asks this Court to reconsider *Ebolum* in light of the "liberal departure policy" of *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). (Defendant's Br. at 16). In *Koon*, the Supreme Court reversed the Ninth Circuit's ruling that negated the district court's discretionary downward departure of several police officers' sentences based on, among other factors, the fact that the victim (the infamous Rodney King) prodded the officers' violence against him and

---

**1.** The Supreme Court's most recent opinion in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), expanding *Apprendi's* reach, does not alter our conclusion. In that case, the court determined that an "exceptional circumstance" aggravating (sentencing) factor in a state statute that increased the petitioner's sentence beyond the statutory maximum of the crime to which the defendant pleaded guilty was unconstitutional because a jury did not determine the defendant's guilt as to that aggravating factor beyond a reasonable doubt. In the instant case, the sentencing factor that increased Defendant's sentence was a *prior conviction* for trafficking illegal aliens in violation of 8 U.S.C. § 1324. Therefore, this case is excepted from *Apprendi's* and, ergo, *Blakely's* dictate that a jury must find beyond a reasonable doubt every fact that increases a defendant's sentence beyond the statutory maximum. *See Apprendi*, 530 U.S. at 490; *Blakely*, 124 S.Ct. at 2536.

the fact that the officers were not a threat to society. *Koon.* 518 U.S. at 103–14. The *Koon* majority focused on the substantive and legislative history of the sentencing guidelines departure provisions and concluded that the discretionary departure provisions in the guidelines were meant to be applied liberally. *Id.* at 98. In *United States v. Coleman,* 188 F.3d 354 (6th Cir. 1999) (*en banc* ), this Court applied *Koon* and concluded that a district court cannot "categorically exclude any non-prohibited factors from consideration for a downward departure." *Coleman,* 188 F.3d at 356.

The defendant in *Coleman* supplied drugs to an undercover law enforcement agent on several occasions and was eventually convicted of several federal drug offenses. *Id.* At sentencing, the defendant filed a motion for downward departure on the basis that the government employed improper techniques to lure the defendant, and other African–Americans who were on parole, to commit drug offenses. *Id.* at 357. The district court reasoned that the defendant's motion raised a selective prosecution issue and was not properly brought at the sentencing phase of the proceedings. *Id.* In other words, the district court did not bother to consider whether the defendant's case was outside the "the typical heartland of cases embodying the conduct that each [relevant] Guideline describes." *Id.* at 358 (citing *Koon,* 518 U.S. at 106–07) (internal citations omitted). This Court reasoned that the district court committed error in failing to consider whether the defendant's motion for downward departure raised an atypical circumstance outside the "heartland" of crack/cocaine cases, which might entitle the defendant to a downward departure. *Id.* at 362 ("[W]e hold that the district court erred by failing

to consider all of the particular circumstances of this case to determine whether the case was removed from the 'heartland' of crack cocaine cases.").[2]

In the instant case, the district court concluded that it could not depart downward from Defendant's sentence because it was "not in the foreign policy business" and therefore was "bound by the Guidelines for these purposes." (J.A. at 45–46). The district court's reluctance to depart downward, thus, presents an appealable issue for this Court to review. *See Ebolum,* 72 F.3d at 37. Defendant argues that the district court's statement that it was "not in the foreign policy business" indicated the court's failure to consider whether this nation's war on terrorism and Defendant's status as a deportable alien would be appropriate considerations that might mandate a departure from the "heartland" of illegal alien reentry cases. (Defendant's Br. at 17). The government, on the other hand, argues that it was "clear" from the district court's comment that it was "not in the foreign policy business" that the court considered Defendant's departure argument and "found that the declared war on terrorism did not fall outside of the heartland of cases covered by the [Sentencing Guidelines]." (Government Br. at 13).

Based on *Coleman* and the factual circumstances of this case, we agree with the government's conclusion that the district court considered the factual circumstances of Defendant's case and determined it was not outside the "heartland" of illegal alien reentry cases. The district court did consider Defendant's factual circumstance and concluded that Defendant's circumstance was contemplated by the sentencing com-

---

2.  It is important for a district court to consider whether a particular factual scenario is outside the "heartland" of cases that the sentencing guidelines considers typical because if the facts are atypical for the particular offense under the sentencing guideline, then the district court would be mandated to depart downward consistent with guideline provisions and case law. *See Coleman,* 188 F.3d at 358–362.

mission. Application note one of the commentary to § 2L1.2 of the Sentencing Guidelines support the district court's view that the sentencing commission considered the war on terrorism when it drafted that guidelines provision. *See* U.S.S.G. § 2L1.2, application n. 1. (defining terrorism broadly). Moreover, as Defendant concedes, deportable alien status must have been considered by the Sentencing Guidelines' commissioners when they drafted guideline sections that invariably applied to illegal aliens. *See Ebolum*, 72 F.3d at 37–38. We therefore agree with the district court's conclusion that the factual circumstance of this case brings it within the "heartland" of cases of illegal alien reentry contemplated by § 2L1.2 of the Sentencing Guidelines.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.